NATHANIEL CRANE, PLAINTIFF IN ERROR v. THE LESSEE
OF HENRY GAGE MORRIS ET AL. AND OF JOHN JACOB AS-
TOR ET AL. DEFENDANT IN ERROR.

Upon a deliberate review of the questions of law discussed and decided in the
case of Carver v. Jackson ex dem. of Astor, 4 Peters's Rep. 1, the court are
entirely satisfied with the opinion and judgment pronounced on that occasion.

The circuit court has no authority whatsoever to order a peremptory nonsuit,
against the will of the plaintiff. This point has been repeatedly settled by this
court, and is not now open for controversy.

The circuit court cannot be called upon, when a case is before a jury, to decide
on the nature and effect of the whole evidence introduced in support of the
plaintiff's case, part of which is of a presumptive nature, and capable of being
urged with more or less effect to the jury.

An ejectment for a tract of land was tried upwards of seventy years after the
date of a lease, recited to have been executed in a deed of release of the pre-
mises in dispute, but which lease was not produced on the trial. Under these
circumstances, the lapse of time would alone be sufficient to justify a presump-
tion of the due execution and loss of the lease, proper to be left to the jury.

The general rule of law is, that a recital of one deed in another, binds the parties
and those who claim under them by matters subsequent. Technically speak-
ing, such a recital operates as an estoppel, which works on the interest in the
land, and binds parties and privies; privies in blood, privies in estate, and pri-
vies in law.

If the recital of a lease in a deed of release be admitted to be good evidence of
the execution of the lease, it must be good evidence of the very lease stated
in the recital, and of the contents, so far as they are stated therein, for they
constitute its identity.

That a husband, even before marriage, may, in virtue of the marriage contract
have inchoate rights in the estate of his wife, which, if the marriage is consum-
mated, will be protected by a court of equity against any antecedent contracts
and conveyances secretly made by the wife, in fraud of those marital rights,
may be admitted; but they are mere equities; and in no just sense constitute
any legal or equitable estate in her lands or other property, antecedent to the
marriage.

The solemn probate of a deed by a witness upon oath before a magistrate, for the
purpose of having it recorded, and the certificate of the magistrate of its due
probate upon such testimony, are certainly entitled to more weight as evidence,
than the mere unexplained proof of the hand-writing of a witness after his
death. The one affords only a presumption of the due execution of the deed,
from the mere fact that the signature of the witness is to the attestation
clause; the other is a deliberate affirmation by the witness, upon oath, before
a competent tribunal, of the material facts to prove the execution.

Whenever evidence is offered to the jury, which is in its nature prima facie proof,
or presumptive proof, its character, as such, ought not to be disregarded; and
no court has a right to direct the jury to disregard it, or to view it under a dif-
ferent aspect from that in which it is actually presented to them. Whatever

[Crane v. The Lessee of Morris et al. and Astor et al.]

just influence it may derive from that character, the jury have a right to give it; and in regard to the order in which they shall consider the evidence in a cause, and the manner in which they shall weigh it, the law has submitted it to them to decide for themselves; and any interference with this right would be an invasion of their privilege to respond to matters of fact.

THIS case came before the court on a writ of error to the circuit court of the United States for the southern district of New York.

In that court, the defendants in error instituted an action of ejectment to recover from the defendant a tract of land situated in the town of Carmel, in the county of Putnam, in the state of New York.

The title exhibited by the plaintiff on the trial in the circuit court, was the same with that, an abstract of which is given in the case of Carver v. Jacksomex dem. of Astor et al. 4 Peters, 1. It was founded on a patent from William the third to Adolph Philipse, dated 17th June 1697, for a large tract of land, including the premises, situated in the then province, now the state of New York. Frederick Philipse, the great nephew and heir at law of the patentee, Adolph Philipse, to whom the land granted by the patent had descended, devised his estate in fee tail to his four children, in equal parts. One of the children of Frederick Philipse having died soon after her father, and the whole estate having, by a common recovery suffered in 1753 by the three surviving children, become vested jointly in them in fee simple, a partition of all the lands under the patent was made in 1754, by which certain portions of the same were allotted to the respective surviving devisees of Frederick Philipse, in severalty, Mary Philipse being one of the parties to the said partition. Mary Philipse, one of the said devisees, afterwards intermarried with Colonel Roger Morris.

The plaintiffs gave in evidence a deed dated on the 13th January 1758, purporting to be a marriage settlement executed by Mary Philipse and Roger Morris, of the first and second part, and by Johanna Philipse and Beverley Robinson of the third and fourth parts. See 4 Peters, 7.

The plaintiffs then proved a title in them, by regular conveyances, from the children and heirs of Roger Morris and Mary his wife, they being deceased; having also proved that the persons under whom the said title was held, were such chil-

dren and heirs. Roger Morris and Mary his wife were attainted by an act of the legislature of New York, passed 22d October 1779.

The plaintiffs gave in evidence by several witnesses, and by the production of receipts for rent, that Roger Morris, for several years before the war of the revolution, was in possession of certain lots, part of the estate held by Mary his wife at the time of her marriage, and when the marriage settlement deed was executed; one of which lots, No. 5, was that for which this ejectment was instituted.

Joseph Crane proved that his father lived on the farm now occupied by the defendant, part of lot No. 5, under Roger Morris, from before the war of the revolution; and continued in the occupation thereof until his death.

A deed from the commissioners of forfeited estates, executed according to the act of assembly of New York, passed 22d October 1779, produced by the defendant, on notice, was read in evidence; by which the said commissioners, on the 1st day of June 1780, conveyed the premises in question, being part of No. 5 in this suit, to John Crane; who, on the 26th day of September 1826, conveyed the same by deed, produced on the same notice, to the defendant.

Upon these proofs the plaintiff rested his case. The counsel for the defendant thereupon objected, and insisted that unless the deed called a marriage settlement deed was accompanied or preceded by a lease, the plaintiff could not recover in this action; that without a lease, the said deed could only operate as a deed of bargain and sale; and the statute of uses would only execute the first use to the bargainees, Johanna Philipse and Beverley Robinson, who took the legal estate in the land; and that the plaintiff could not recover without producing the lease or accounting for its non-production.

And because no lease had been produced, and no evidence given to account for its non-production, the counsel for the defendant moved the circuit court to non-suit the plaintiff; but the said circuit court, before the said justice and judge, then and there overruled the said objection, and refused to grant the said motion for a non-suit, and decided that the said plaintiff was entitled to recover without producing any lease, or accounting for its non-production, inasmuch as the recital in the release

was evidence of such a lease having been executed; to which said opinion and decision of the said circuit court the counsel for the said defendant, then and there on the said trial, excepted. And thereupon the counsel for the said defendant, to maintain and prove the said issue on his part, produced and read in evidence conveyances by way of lease and release severally, dated 26th September 1765, and 18th September 1771; which were given in evidence. The leases were executed by Roger Morris, and by Roger Morris and Mary his wife, formerly Mary Philipse; and the releases by Roger Morris and wife, to William Hill, Joseph Merrit, and James Rhodes. These deeds did not mention or profess to be made under or in pursuance of any deed or deeds of marriage settlement, or that they were made in the execution of any power. And by the releases Roger Morris covenanted for himself and his heirs, that he was lawfully seised of the premises granted in fee simple, and that he had good right, full power, and lawful authority, to grant, bargain, and sell the same as aforesaid; and the said releases also contained the usual covenants for quiet enjoyment, against all former incumbrances; and grants of general warranty and for further assurance. The parties of the first part in the said releases were described as follows:

"Between the honourable Roger Morris, of the city of New York, Esquire, and Mary his wife, late Mary Philipse, one of the daughters and devisees of the honourable Frederick Philipse, Esquire, deceased, of the one part:" and the description of the land granted, commenced as follows, to wit: "all that certain farm and plantation, situate, lying, and being in the county of Duchess aforesaid, and known and distinguished by farm number thirty-six of lot number five, of the lands formerly granted by letters patent to Adolph Philipse, Esquire; from whom the same descended to the said Frederick Philipse, Esquire, as his heir at law; the lands so granted by the same letters patent, being usually called and known by the several names of Fredericksburgh, and Philipse upper patent, which said farm or plantation, number thirty-six, begins," &c.

The counsel for the defendant then read in evidence a deed of partition executed by the devisees of Frederick Philipse, before the intermarriage of Roger Morris and Mary Philipse,

and Henry Beekman and others, executed January 18, 1758, by which the boundary line between the patent to Adolph Philipse and colonel Henry Beekman was declared and established.    Also, an exemplification of a deed dated 18th February 1771, between Roger Morris and others, relative to the lines of the patent to Adolph Philipse, and those of other patents for adjoining lands.

The counsel for the defendant then produced and read in evidence, certain improving leases for life, executed by Roger Morris and Mary his wife, for parts of the land held by the said Mary under the patent to Adolph Philipse, and the deed of partition.    These leases were severally dated on the 23d October 1765, on the 21st day of June 1773, 16th June 1773.

The counsel for the defendant then produced and read in evidence, the books of records from the office of the register of the city and county of New York; from which it appeared that deeds and conveyances of land (as well as various other instruments in writing) had been acknowledged by the grantors, or proved by the subscribing witness, and recorded from a period anterior to the year 1758 down to the close of the war of the revolution; and that during the whole period of the war, except from March to September, in the year 1783, deeds had been acknowledged or proved, and recorded; but from March 1, 1783, to March 17, 1784, no deeds had been recorded; some of which were acknowledged or proved before the members of his majesty's council, others before aldermen of the said city; some before masters in chancery, and others before the judges of county courts in other counties: and it also appeared that deeds of lands, in other counties of the state, were recorded in the city and county of New York; and it also appeared, as to the deeds proved, before and after the close of the war (and of the last class a considerable number had been proved before Judge Hobart), that the certificates of proof stated the delivery, as well as the execution of the deed.

The particular character of the deeds and conveyances was not examined into or stated; but the records were produced for the purpose of showing the fact of the proving and recording of deeds and conveyances, and the form or manner in which it was done.

And thereupon the plaintiff read in evidence a part of the

[Crane v. The Lessee of Morris et al. and Astor et al.]

deposition of Thomas Barclay, in which he testified that he knew Colonel Roger Morris, and his wife Mary, about the year 1759; they were then married, and lived in the city of New York.

And hereupon, the proofs having closed, and the counsel for both parties having summed up the said cause to the jury, the counsel for the plaintiff submitted to the said circuit court the following points:

1. That the acts or declarations of the parties to the settlement, after the birth of the children, form no ground of presumption in this action against the delivery of the settlement deed.

2. That Roger Morris stood in the character of a grantee in that deed, and that a possession of the deed by him is evidence of its delivery, because the settlement gave him a larger interest in the lands than his mere marital rights.

3. That the actual signing and sealing of this deed by Beverley Robinson and Johanna Philipse, as well as by the other parties, and the attestation by the subscribing witnesses, that the deed was signed, sealed, and delivered in their presence, by all the parties, as proved on the part of the plaintiff, are in judgment of law complete evidence of such delivery, and of an acceptance of the estates therein granted and limited.

And thereupon the counsel for the defendant submitted to the said circuit court, the following points in writing, on the question of a delivery of the settlement deed of January 13, 1758; upon which points the said counsel prayed the said circuit court to charge and instruct the jury, as matters of law arising upon the proofs and allegations of the parties.

I. That it was necessary to the validity of the deed that it should have passed into the hands of the trustees, or one of them, or some person for them, with the intent that it should take effect as a conveyance.

(2.) It is not enough that the trustees, as well as the other parties, signed and sealed, unless the deed was also delivered to and accepted by them, or some person on their behalf.

II. The evidence arising from the proof of the deed by William Livingston, in 1787, is no stronger than that arising from the proof of the hand-writing and death of the subscribing witnesses.

(2.) In either case it is only prima facie evidence, or evidence from which a delivery may be presumed, and may be rebutted by direct or circumstantial evidence, which raises a contrary presumption.

· III. That in the absence of all proof, that the trustees, or any other person for them, ever had the deed, and there being no proof of a holding under it, the fact that the deed came out of the hands of Morris, in 1787, is sufficient of itself to rebut any presumption of a delivery arising from the proof of the deed by William Livingston, or the proof of the hand-writing and death of the subscribing witnesses.

IV. If the jury, from the evidence, believe that the deed was signed and sealed on the day of its date, and that all William Livingston and Sarah Williams witnessed was what took place at that time, and that the deed was not delivered before the execution of the Beekman deed, on the 18th of January 1758, then there is no evidence of a delivery.

(2.) It being conceded by the plaintiff's counsel, that the deed was not delivered at the time of the execution of the Beekman deed, on the 18th of January 1758, then, if the jury believe the deed was signed, sealed and witnessed, on the day it bears date, there is no evidence of a delivery.

(3.) If the jury believe the deed was not delivered on the day it was signed, sealed, and witnessed, then there is no evidence of a delivery.

V. The acts and omissions of Morris and wife, so far as they go to induce the belief that the deed was not perfected by a delivery, are of the same force and effect against the children and their grantee, as they would be against Morris and wife themselves.

· VI. The jury, in judging of the acts said to be hostile to the settlement deeds, if they may determine with what intent those acts were done, must gather that intent from the acts themselves.

VII. Although the deeds to Hill, Merritt, and Rhodes, would, in law, be a good execution of the power contained in the settlement deed, supposing that to have been duly delivered; yet upon the question whether that deed was or was not perfected by a delivery, those deeds contain evidence that the

[Crane v. The Lessee of Morris et al. and Astor et al.]

parties were acting as the owners of the land in fee, and not as tenants for life executing a power.

VIII. The evidence upon the one side or the other should not be submitted to the jury as prima facie or presumptive evidence, either for or against a delivery; but the jury should consider and weigh the whole evidence together, and from the whole, determine whether or not the deed was delivered.

And thereupon the opinion of the said circuit court upon the points submitted on the part of the defendant was delivered in substance as follows:

To the first point, and the second branch of it, the said court gave the instructions as asked on part of the defendant.

Upon the second of the said points, the said circuit court overruled and refused to give the same to the jury; to which said opinion and decision of the said circuit court, the counsel for the defendant, then and there on the said trial, also excepted.

Upon the second branch of the said second point, the said circuit court gave the instructions as follows: the proof by William Livingston, and the proof of the hand-writing and death of the witnesses, are only prima facie evidence, from which a delivery may be presumed, and may be rebutted by direct or circumstantial evidence, which raises a contrary presumption.

Upon the said third point, the said circuit court overruled and refused to give the instructions therein prayed for to the jury; to which said decision and opinion of the said circuit court, the counsel for the defendant, then and there on the said trial, also excepted.

Upon the said fourth point, the said circuit court overruled and refused to give the instructions therein prayed for as matter of law, but that it was evidence for the consideration of the jury; to which said opinion and decision of the said circuit court, the counsel for the defendant, then and there on the said trial, also excepted.

Upon the second branch of the said fourth point, the said court overruled and refused to give the instruction therein prayed for to the jury, saying that such supposed concession was denied by the plaintiff's counsel, and they refused to give any instruction thereon; to which said opinion and decision of the

said circuit court, the counsel for the defendant, then and there on the said trial, also excepted.

Upon the third branch of the said fourth point; the said circuit court overruled and refused to give the instruction therein prayed for to the jury; to which said opinion and decision of the said circuit court, the counsel for the defendant, then and there on the said trial, also excepted.

Upon the said fifth point, the said circuit court gave the instruction, as prayed for, to the jury.

Upon the said sixth point, the said circuit court overruled and refused to give the instruction therein prayed for to the jury, without adding to the said point the following words, to wit, "connected with the other evidence in the cause;" and with that addition, gave the said instruction to the jury; to which said opinion and decision of the said circuit court, the counsel for the defendant, then and there on the said trial, also excepted.

Upon the said seventh point, the said circuit court overruled and refused to give the instruction as prayed, but gave the instruction following: "although the deeds to Hill, Merritt, and Rhodes, would in law be a good execution of the power contained in the settlement deed, supposing that to have been delivered; yet, upon the question of whether that deed was or was not perfected by delivery; those deeds are competent evidence, from which the jury may judge whether Morris and his wife intended to act as if no marriage settlement had been executed, or under the power contained in the marriage settlement;" to which said opinion and decision of the said circuit court the counsel for the defendant, then and there on the said trial, also excepted.

Upon the said eighth point, the said circuit court overruled and refused to give the instruction therein prayed for to the jury; to which said opinion and decision of the said circuit court, the counsel for the defendant, then and there on the said trial, also excepted.

And the opinion of the said circuit court, upon the points submitted by the counsel for the plaintiff, was delivered in substance as follows, to wit:

Upon the first of those points, that the acts of Morris and

wife were proper evidence to be considered by the jury in determining whether the settlement deed was delivered or not.

Upon the second of those points, that, strictly speaking, Morris could neither be considered as grantor or grantee in the settlement deed, and therefore the mere possession of the deed by him was no affirmative proof on either side as to the fact of delivery; to which said opinion and decision of the said circuit court, the counsel for the defendant, then and there on the said trial, also excepted.

Upon the third of those points, that if by " complete evidence," it was intended that the plaintiff's evidence was conclusive, or such as could not be controverted, the said instruction should not be given to the jury.

The jury found a verdict for the plaintiff in the ejectment, and judgment having been entered thereon, the defendant prosecuted this writ of error.

The case was argued by Mr Beardsley and Mr Hoffman for the plaintiff in error; and by Mr Ogden and Mr Wirt for the defendant.

The counsel for the plaintiff in error presented the following points for the consideration of the court, which were fully argued by the counsel for the defendant.

The plaintiff below should have been nonsuited.

1. Unless the marriage settlement release of 1758, was accompanied or preceded by a lease, it could only operate as a deed of bargain and sale, and the statute of uses could only execute the first use.

2. The recital of a lease in the release, was competent evidence to prove that a lease was originally *executed*, but was not, until the non-production of the lease was accounted for, competent evidence of the *contents* of such lease. The lease therefore should have been produced or its non-production accounted for.

The court erred in instructing the jury " that strictly speaking Morris could neither be considered as grantor or grantee in the settlement deed."

The court erred in instructing the jury that the mere possession of the deed by Morris was no affirmative proof on either side as to the fact of delivery.

[Crane v. The Lessee of Morris et al. and Astor et al.]

The court erred in refusing to instruct the jury that the evidence arising from the proof of the settlement deed by William Livingston, in 1787, was no stronger than that arising from the proof of hand writing and death of the subscribing witnesses.

The court erred in refusing to instruct the jury that in the absence of all proof that the trustees, or any other person for them, ever had the settlement deed, and there being no proof of a holding under it, the fact that it came out of the hands of Morris in 1787, is sufficient of itself, to rebut any presumption of a delivery arising from the proof of the deed by William Livingston, or the proof of the hand writing and death of the subscribing witnesses.

The court erred in refusing to instruct the jury, that if they believed the deed was signed and sealed on the day of its date, and that all William Livingston and Sarah Williams witnessed was what took place at that time, and that the deed was not delivered before the Beekman deed on the 18th January 1758; then there was no evidence of a delivery.

The court erred in refusing to instruct the jury, that if they believed the deed was not delivered on the day it was signed, sealed and witnessed, then there was no evidence of a delivery.

The court erred in refusing to instruct the jury, *unqualifiedly*, that in judging of the acts said to be hostile to the delivery of the settlement deed, if they were to determine the intent with which those acts were done, they must gather that intent solely from the acts themselves.

The court erred in refusing to instruct the jury, that the deeds to Hill, Merritt and Rhodes, contained evidence that the parties were acting as owners of the land in fee, and not as tenants for life.

The court erred in refusing to instruct the jury, that they should not look at the evidence upon one side or the other, as prima facie or presumptive evidence, either for or against a delivery; but that they should consider and weigh the whole evidence together, and, from the *whole*, determine whether or not the deed was delivered.

Mr Justice STORY delivered the opinion of the Court.

Many of the questions which have been discussed in this

case arose in the suit of Carver v. Jackson, ex dem. of Astor et al., 4 Peters's Rep. 1; which was founded upon the same title, and substantially upon the same evidence as is presented in the present record. As upon a deliberate review we are entirely satisfied with the opinion and judgment pronounced on that occasion (which was indeed most thoroughly and anxiously considered), we do not propose to go at large into the reasoning now; but to confine ourselves to the new grounds of argument, which have been so earnestly pressed upon the court, and to the instructions prayed and refused, or given by the circuit court to the prejudice of the plaintiff in error.

In the progress of the cause, after the plaintiff had given the evidence in support of his cause, the counsel for the defendant insisted, " that unless the deed, called the marriage settlement deed, which was given in evidence, was accompanied or preceded by a lease, the plaintiff could not recover in this action; that without a lease, the said deed could only operate as a bargain and sale, and the statute of uses could only execute the first use to the bargainees, Johanna Philipse and Beverley Robinson, who took the legal estate in the land, and that the plaintiff could not recover without producing the lease, or accounting for its non-production. And because no lease had been produced, and no evidence given to account for its non-production, the counsel for the defendant moved the circuit court to nonsuit the plaintiff; but the circuit court overruled the objection, and refused to grant the motion for a nonsuit; and decided that the plaintiff was entitled to recover without producing any lease, or accounting for its non-production, inasmuch as the recital in the release was evidence of such a lease having been executed;" to which opinion and decision the defendant excepted. This constitutes the subject matter of the first ground, now assigned for error on behalf of the defendant before this court.

It might be a sufficient answer to the motion for a nonsuit, to declare that the circuit court had no authority whatsoever to order a peremptory nonsuit against the will of the plaintiff. This point has been repeatedly settled by this court, and is not now open for controversy. Doe d. Elmore v. Grymes, 1 Peters, 469. D'Wolf v. Rabaud, 5 Peters, 476. But independent of this ground, which would be conclusive, there

[Crane v. The Lessee of Morris et al. and Astor et al.]

is another which seems equally so; and that is, that it called
upon the court to decide upon the nature and effect of the
whole evidence introduced in support of the plaintiff's case,
part of which was necessarily of a presumptive nature, and
capable of being urged with more or less effect to the jury.
It is to be recollected that the marriage settlement deed was
dated and purported to be executed in January 1758, and
was designed to operate as a conveyance by way of lease
and release, and the sole object of the lease was to give effect
to the release, as a common law conveyance, and not as a mere
bargain and sale. It stated, " that in consideration of a mar-
riage intended to be had and solemnized between the said
Roger Morris and Mary Philipse (two of the parties to the
indenture), and the settlement hereafter made by the said Roger
Morris on the said Mary Philipse, and for and in considera-
tion of the sum of five shillings, &c. &c., the said Mary Phil-
ipse hath granted, &c. and by these presents doth grant, &c.
unto the said Johanna Philipse and Beverley Robinson (the
trustees under the settlement), in *their actual possession, now
being by virtue of a bargain and sale to them thereof, made
for one whole year, by indenture bearing date the day next
before the day of the date of these presents, and by force of
the statute for transferring of uses into possession,* and to
their heirs, all those several lots, &c. &c. "   The recital, there-
fore, explicitly admits the existence of the lease and the pos-
session under it, and bound the parties, as well as those who
as privies claim under them.   It will be recollected also, that
the trial of the present case was in June 1830, upwards of
seventy years after the date of the lease, which was confessedly
an instrument of a fugitive and temporary nature, and in-
tended to serve merely as a means of giving full operation to
the release.   Under such circumstances, if no other objection
existed to the title, the lapse of time would alone be sufficient
to justify a presumption of its due execution and loss, and non-
production by the plaintiff, proper to be left to the jury; and
thus justify the court in refusing a nonsuit.   In the case of
Carver v. Jackson, this court observed that such a recital of a
lease in a release, may, under circumstances, be used as evi-
dence even against strangers.   Thus, " if the existence and
loss of the lease be established by other evidence, then the

recital is admissible as secondary proof in the absence of more perfect evidence, to establish the contents of the lease.    And if the transaction be an ancient one, and the possession has been long held under such release and is not otherwise to be accounted for, then the recital will, of itself, under such circumstances, materially fortify the presumption, from lapse of time and length of possession, of the original existence of the lease." In the present case there was prima facie evidence of the due execution of the release, and evidence also of a possession by Morris and his wife of the premises in controversy for many years afterwards, consistent with, if not necessarily flowing from that instrument. Under such circumstances it would have been unjustifiable on the part of the circuit court to have directed a nonsuit, the effect of which would have been to have excluded the jury from weighing the whole evidence, even if the case had been against a party who was a stranger to the title.

But the defendant is in no just sense a stranger to the title. He claims in privity of estate by a title derived from the state of New York, whose sole title is founded upon that of Morris and his wife, and is subsequent to the release.    The general rule of law is, that a recital of one deed in another, binds the parties, and those who claim under them by matters subsequent.    Technically speaking, such a recital operates as an estoppel, which works on the interest of the land, and binds parties and privies; privies in blood, privies in estate and privies in law.    Between such parties, the original lease need not at any time be produced.    The recital of it in the release, is conclusive.    It is not offered as secondary, but as primary proof; not as presumptive evidence, but as evidence operating by way of estoppel, which cannot be averred against, and forms a muniment of the title.    It is otherwise where the recital is offered against strangers claiming by an adverse title, or by persons claiming from the same parties by a title anterior and paramount.    In such cases the lease itself is the primary evidence; and its loss or non-production must be accounted for before the recital can be let in as secondary evidence of its execution or contents.    But even here (as has been already intimated), a long lapse of time furnishes a reasonable presumption of the loss.    The argument of the bar is, that the recital

may be conclusive of the existence of the lease in favour of the lessees, but not for or against any other persons claiming under them by distinct conveyances. If the recital be conclusive in favour of the lessees, it must be equally conclusive in their favour as releasces, since the latter works upon the possession acquired under the lease. But in truth, the recital as an estoppel binds all privies, where claiming by the same or by a distinct instrument. It is the privity which constitutes the bar, and not the fact of taking by the very deed which contains the recital. It is also said that the recital of a lease in a release, is competent evidence to prove that the lease was originally *executed;* but not until its non-production is accounted for, competent evidence of the contents of the lease. If the recital of a lease be admitted to be good evidence of the execution, it must be good evidence of the execution of the very lease stated in the recital, and of the contents, so far as they are stated therein, for they constitute its identity. But the argument itself, can apply only where the recital is offered as secondary evidence. In the present case it is offered, not as secondary, but as primary and conclusive.

This whole subject underwent a more elaborate consideration of this court in the case of Carver v. Jackson, and the doctrine now asserted, was reasoned out, both upon principle and authority. The language of the court upon that occasion was, " we are of opinion, not only that the recital of the lease in the deed of marriage settlement was evidence between these parties (and the present defendant is in a similar predicament), of the original existence of the lease, but that it was conclusive evidence between these parties, of that original existence; and superseded the necessity of introducing any other evidence to establish it." And after a review of the authorities, it was added, " we think then, that upon authority, the recital of the lease in the deed of release, in the present case, was conclusive evidence upon all persons claiming under the parties in privity of estate, as the present defendant in ejectment does claim. And independently of authority, we should have arrived at the same result upon principle; for the recital constitutes a part of the title, and *establishes a possession under the lease* necessary to give the release its intended operation. It works upon the interest in the land, and creates an

[Crane v. The Lessee of Morris et al. and Astor et al.]

estoppel, which runs with the land against all persons in privity under the releasees. It was as much a muniment of the title, as any covenant therein running with the land." And it was then added, "this view of the matter dispenses with the necessity of examining all the other exceptions as to the nature and sufficiency of the proof of the original existence and loss of the lease, and of the secondary evidence to supply its place."

In every view of the matter, then, the non-suit was properly denied.

The next error assigned grows out of an instruction to the jury, asked of the courts by the counsel for the plaintiff. The prayer was, "that Roger Morris stood in the character of a grantee in the deed (the settlement), and that a possession of the deed by him is evidence of its delivery, because the settlement gave him a larger interest in the lands, than his mere marital rights." The court refused to give this instruction, and declared that, "strictly speaking, Morris could neither be considered as grantor or grantee in the settlement deed, and therefore the mere possession of the deed by him was no affirmative proof on either side, as to the fact of delivery;" to which opinion and decision the counsel for the defendant excepted. It is somewhat singular that the defendant should have excepted to the refusal to grant the prayer asked by the plaintiff, since the remarks made by the court seem to have been rather reasons for the refusal, than an instruction to the jury; and if those reasons were not well founded, it was no prejudice to the defendant. But waving this consideration, let us see if the circuit court was wrong in stating that, strictly speaking, Morris could neither be considered as grantor or grantee in the settlement. The plaintiff contended that he was exclusively grantee, and the defendant's counsel now contend that he was exclusively grantor. This is a point which must be decided by an examination of the terms of the settlement deed. That a husband, even before marriage, may, in virtue of the marriage contract have inchoate rights in the estate of his wife, which, if the marriage is comsummated, will be protected by a court of equity against any antecedent contracts and conveyances secretly made by the wife in fraud of those marital rights, may be admitted; but they are mere

equities, and in no just sense constitute any legal or equitable estate in her lands or other property antecedent to the marriage. In the present settlement deed, which is by indenture tripartite, Mary Philipse purports to be the party of the first part, Roger Morris of the second part, and Johanna Philipse and Beverley Robinson (the trustees) of the third part. Mary Philipse alone, without any co-operation on the part of Morris, purports to grant, and does grant to the trustees, all the land mentioned in the deed (including the premises in controversy) as her own property, upon certain uses specified in the habendum, and among others after the marriage, to the use of herself and her husband during their joint lives and the life of the survivor of them, with certain subsequent uses and powers, not material to be mentioned. If the settlement deed stopped here, the case would be too plain to admit of doubt. Mary Philipse must, in law, be deemed the sole grantor of the lands, and the trustees and Morris must be deemed grantees, and to take in that characte exclusively. In the close of the indenture is the following clause: "and the said Roger Morris, for and in consideration of the premises, and the sum of five shillings, &c., doth hereby for himself, his heirs, executors and administrators, covenant, promise, grant and agree, to and with the said Johanna Philipse and Beverley Robinson, their and each of their heirs, &c. &c. that in case the said Mary Philipse shall survive him, the said Roger Morris, that then, and in such case, *immediately after his death*, all and singular *the moneys and personal estate* whatsoever, *whereof he shall die possessed*, shall be accounted the proper money and estate of the said Mary Philipse during her natural life, and after her decease, in case there be no issue begotten between the said Roger Morris and Mary Philipse, that then the said moneys and personal estate shall and may be had and taken by the executors and administrators of the said Roger Morris, &c.; but if such child or children shall survive the said Roger Morris and Mary Philipse, then the said moneys and estate to be divided among them in such shares and proportions as he, the said Roger Morris, shall think fit at any time hereafter, by his last will and testament, or otherwise, to order and direct." It is obvious from the language of this clause, that it can operate only by way of covenant. It conveys no present interest in

any personal property whatsoever; and affects to dispose only of the moneys and personal estate of which Morris shall die possessed, at whatever time they may have been acquired. It leaves him at full liberty to dispose of all the personalty that he shall at any time possess during his life time, toties quoties. As a grant, it would be utterly void from its uncertainty. As a covenant, it has a sensible and just operation in favour of the trustees. In legal contemplation, then, this clause makes Morris, strictly speaking, only a covenantor, and not a grantor. But as to the real estate passed to the trustees by the indenture, to which alone the instruction could properly apply, he was clearly a mere grantee. If, therefore, there was any error in the circuit court on this point, it was not an error prejudicial to the defendant, but to the plaintiff, as to its bearing on the question of the possession and delivery of the settlement deed. But looking to the whole provisions of that deed, it might well be stated, that strictly speaking, Morris could neither be considered as grantor or grantee. He was not grantor in any sense, except as to the personalty, and as to that, he was properly a covenantor. And, technically speaking, at the time of the execution of the deed, the trustees were the grantees in the deed, though by the operation of the statute of uses, the use to Morris, carved out of their seisin, drew to it the seisin and possession of the estate, as soon as that use, by his subsequent marriage, had a legal existence. Under such circumstances, the direction that the mere possession of the deed by Morris was no affirmative proof, on either side, of the fact of the delivery, was at least as favourable to the defendants as the law would justify; and consequently, he has nothing to complain of.

We now come to the instructions asked of the court by the counsel for the defendant. And, in the first place, it is argued, that the court erred in refusing to instruct the jury that " the evidence arising from the proof of the deed of William Livingston in 1787, is no stronger than that arising from the proof of the hand-writing and death of the subscribing witnesses." But this instruction, so asked, is not upon any matter of law, but upon the mere weight of evidence, which the court was not bound to give, and which was matter for the proper consideration of the jury. But if it had been

otherwise, we are not prepared to admit that the instruction ought to have been given. The solemn probate of a deed by a witness upon oath before a magistrate, for the purpose of having it recorded, and the certificate of the magistrate of its due probate upon such testimony, are certainly entitled to more weight as evidence, than the mere unexplained proof of the hand-writing of a witness after his death. The one affords only a presumption of the due execution of the deed from the mere fact, that the signature of the witness is to the attestation clause; the other is a deliberate affirmation by the witness, upon oath, before a competent tribunal, of the material facts to prove the execution. And there were, in the present case, circumstances which gave an enhanced value and weight to this probate.

In the next place, it is argued that the court erred in refusing to give the instruction, "that in the absence of all proof, that the trustees, or any person for them, ever had the deed, and there being no proof of a holding under it, the fact that the deed came out of the hands of Morris in 1787, is sufficient, of itself, to rebut any presumption of a delivery arising from the proof of the deed by William Livingston, or the proof of the hand-writing and death of the subscribing witnesses." This instruction plainly called upon the court to decide mere matters of fact, which were in controversy before the jury, and upon the assumption of such matters of fact to direct the jury that they rebutted other matters of fact. It was no part of the duty of the court to decide upon the relative weight and force of these facts. They exclusively belonged to the jury; and the instruction was properly refused.

The same answer may be given to the refusal to give the instructions prayed for in all the various branches embraced in the fourth instruction of the defendant. They are as, follows: 1. "If the jury, upon the evidence, believe that the deed was signed and sealed on the day of its date, and that William Livingston and Sarah Williams witnessed what took place at that time, and that the deed was not delivered before the execution of the Beekman deed, on the 18th of January 1758, then there is no evidence of a delivery." 2. "It being conceded by the plaintiff's counsel, that the deed was not delivered at the time of the execution of the Beekman deed, on

the 18th of January 1758, then if the jury believe the deed was signed, sealed and witnessed on the day it bears date, there is no evidence of a delivery." 3. "If the jury believe the deed was not delivered on the day it was. signed, sealed and witnessed, then there is no evidence of a delivery."

The supposed concession by the plaintiff's counsel, was utterly denied by them at the time; and of course was properly deemed by the court as out of the case. The whole scope of all these instructions was to call upon the court to decide, as matter of law, upon the evidence before the jury, what portion of it was or was not proof of a delivery of the deed, and how far certain supposed facts controlled or might control the effect of all the other evidence upon the same point. There was positive evidence before the jury of the delivery of the deed, from the probate of it by Governor Livingston before Judge Hobart. How then could the court be called upon to say, that there was no evidence? The circumstances alluded to, and hypothetically put in the instructions, were certainly proper to be left to the jury, if found by them to be true, to rebut this evidence. They were matter for comment and argument to the jury, by counsel, upon this vital question in the cause. But the court had no right to say, that they would, or ought to overcome all other evidence in the case of the delivery of the deed. The jury were not to be told as matter of law, that if they found or believed one fact, there was no evidence of another independent fact; or because the deed was not delivered on a particular day, therefore there was no evidence of a delivery at all. They were to judge of the fact of delivery from all the circumstances of the case. It was their exclusive province; and it was no part of the duty of the court to instruct them, however it might advise them, in respect to the weight of conflicting evidence, or the inferences which they should deduce from one fact to decide their belief of another. These instructions were, therefore, properly refused; and, indeed, some of them are open to even more serious objections, as logical deductions upon mere matters of fact. The conclusions do not necessarily flow from the premises.

The next objection is, that the court refused to instruct the. jury that, "in judging of the acts said to be hostile to the settlement deed, if they may determine with what intent these

acts were done, they must gather that intent from the acts them-selves." The refusal was not unqualified, for the court gave the instruction with the addition of the words "connected with the other evidence in the cause."

In our opinion, the instruction, without the qualification, was properly refused. In cases where the interests of third persons may be affected by the acts of others—where, as in the present case, the rights of children are to be affected by the acts of parents, it is most material to ascertain the intent with which these acts were done. The intent may restrain, enlarge or explain the acts, so as to change their whole effect in point of evidence. The acts done with one intent may press strongly in point of pre-sumption one way; with another intent, they may afford an equally cogent presumption the other way. How is this intent to be ascertained? It may, indeed, accompany and qualify the acts; but it may, on the other hand, arise and be exclusively provable by extrinsic circumstances. Are these extrinsic circumstances to be shut out from the cause, if they are the sole means of demonstrating the intent? If not, upon what ground are they to be excluded, when they may confirm or qualify or repel any inferences of intent deducible, ordinarily, from the acts standing alone? No rule of evidence exists, which, in our judgment, could justify such a proceeding; and no authority has been cited, at the bar, in favour of its adoption. One of the grounds of argument at the bar is, that the hostile acts relied on arose from the execution of certain deeds of lease and release, the intent of which might be gathered from the contents of the writings. But the question was not what were the contents of these deeds, as matters of legal construc-tion, but what was the intent with which they were made; or rather what was the estate out of which Morris and wife (the grantors) intended to carve them. Were they designed to be an execution of the powers and authority under the settlement deed? Or, if an excess of these powers, were they intended not to be hostile to the interests conferred by that deed? Or were they solely and designedly an exercise of the general rights of husband and wife over the estate of the latter, unfet-tered by any settlement? Their direct operation was not in controversy. They were introduced for a collateral purpose, as matters of presumption against the validity of the settle-

ment deed as an executed conveyance. The intent, then, was open to proof as matter in pais; and all the evidence, legally conducing to establish it, was to be considered by the jury in connexion. But the instruction does not allude to any deeds whatsoever. It is in the most general terms and speaks of acts which may as properly refer to any other thing done in pais, as to solemn conveyances. This subject was discussed very much at large in Carver v. Jackson, and the result to which the court arrived, was precisely the same as is now indicated.

The next objection is, that the court refused to instruct the jury, that "although the deeds to Hill, Merrit, and Rhodes would in law be a good execution of the power contained in the settlement deed, supposing that to have been duly delivered; yet upon the question, whether that deed was or was not perfected by a delivery, these deeds contain evidence that the parties were acting as owners of the land in fee, and not as tenants for life executing a power." But the court gave the following instruction, that "although the deeds to Hill, Merrit and Rhodes would in law be a good execution of the power contained in the settlement deed, supposing that to have been delivered, yet upon the question whether that deed was or was not perfected by delivery, those deeds are competent evidence from which the jury may judge whether Morris and his wife intended to act as if no marriage settlement had been executed, or under the power contained in the marriage settlement." To this instruction, so given, the defendant also excepted. The sole object of introducing the deeds to Hill, Merrit and Rhodes here referred to, (which were introduced on the part of the defendant) was to raise a presumption against the delivery of the settlement deed. The argument seems to have been, that although those deeds might have been a fit and good execution of the power reserved to Morris and his wife by the settlement deed, yet the omission to make any reference to that power, or to state in those deeds that they were acting under and in virtue of a power, was evidence that they were acting, not under any power, but as owners of the fee. If they were acting as owners of the fee, then that circumstance afforded, pro tanto, a presumption against the delivery of the settlement deed; since parties acting under and entitled to act

solely under the power in that deed, would naturally refer to it as the foundation of their conveyances. Now, so far as the presumption would go, it was fairly and fully left to the jury as evidence, by the very instruction given to the court.

But the instruction which was refused, called upon the court to go farther, and to decide as matter of law, that the parties were in fact acting as owners of the land in fee, and not as tenants for life, executing a power. Surely, it will not be pretended that in order to a due execution of a power, it is necessary that it should be recited or referred to in the executing instrument of conveyance. The form of the instruction prayed for admits this. It is sufficient that the power exists, and is intended to be executed; and that intent is matter in pais, to be collected from all the circumstances of the case. The deeds of Hill, Merrit and Rhodes, contain nothing on their face (as the instruction prayed for concedes) which is inconsistent with or repugnant to the power in the settlement deed; and it demands of the court, notwithstanding, that in point of fact they were not executed under the power. This was matter of fact and intent, involved in the issue before the jury, and as such, exclusively for their decision. This very point underwent the most deliberate consideration of this court in the case of Carver v. Jackson, upon an exception taken to the charge of the court. It was then treated solely as a matter of fact, for the consideration of the jury; and from that view of it, we do not perceive the slightest reason to depart.

The next and last objection relied on is, that the court refused to instruct the jury, that "the evidence upon the one side or the other should not be submitted to the jury as prima facie or presumptive evidence, either for or against a delivery; but the jury should consider and weigh the whole evidence together, and from the whole determine whether or not the deed was delivered." That the whole evidence was to be considered and weighed by the jury, upon the points in issue, was indisputable and undisputed. The only question was, whether the defendant had a right to insist upon shutting out from the consideration of the jury the nature of the evidence, as prima facie proof, or otherwise, and to prescribe the order and manner in which it should be examined and weighed by them. We know of no principle of law upon which such a claim can be main-

[Crane v. The Lessee of Morris et al. and Astor et al.]

tained. Whenever evidence is offered to the jury, which is in its nature prima facie proof, or presumptive proof, its character, as such, ought not to be disregarded; and no court has a right to direct the jury to disregard it, or to view it under a different aspect from that in which it is actually presented to them. Whatever just influence it may derive from that character, the jury have a right to give it; and in regard to the order in which they shall consider the evidence in a cause, and the manner in which they shall weigh it, the law has submitted it to them to decide for themselves; and any interference with this right, would be an invasion of their privilege to respond to matters of fact. The objection is therefore overruled.

Upon the whole, the opinion of the court is, that the judgment of the circuit court ought to be affirmed, with costs.

Mr Justice BALDWIN dissented in writing.

The opinion of Mr Justice Baldwin was not delivered to the reporter.

This cause came on to be heard on the transcript of the record from the circuit court of the United States for the southern district of New York, and was argued by counsel; on consideration whereof, it is ordered and adjudged by this Court, that the judgment of the said circuit court in this cause be, and the same is hereby affirmed, with costs.