HENRY G. BABCOCK *v.* HENRY J. RAYMOND AND OTHERS.

In an action to recover for a literary production shown to have been furnished the defendant at his request, and used by him, the opinion of the person who prepared it, as to its actual value, formed with reference to the time and labor employed in its preparation, is competent to be given in evidence, to show the amount the plaintiff is entitled to recover; and, if uncontroverted, should be deemed conclusive upon the question of value.

The proprietors of a newspaper published a standing notice, inviting voluntary correspondence containing important news, promising, if they used any such when so furnished, that it would be liberally paid for. In consequence of this notice, an article of a political character, purporting to contain statistics of the views of people in different parts of the country respecting the presidential candidates at the then coming election, was prepared, and sent with a request that if it was not desired, to return it, that the writer might get a market for it elsewhere.

The article was retained and published. *Held,*

I. That, under the circumstances, the defendants, by publishing the article, should be considered as admitting it to be of the character which their notice invited, and were liable for its value.

II. The testimony of the writer, giving his opinion of its value, formed with reference to the time and labor employed upon it, standing uncontradicted, was sufficient to entitle the plaintiff to a judgment for the amount stated.

III. Upon such evidence, the justice erred in dismissing the complaint at the trial.

APPEAL from a judgment of the District Court for the first district. The action was brought against the proprietors of the New York Times, to recover for the services of plaintiff in the preparation of an article published in that paper.

On the trial before the justice, the plaintiff was sworn in his own behalf. He testified to having seen in the Times a standing notice that voluntary correspondence containing *important news,* was solicited, and, if used, would be liberally paid for. In consequence, he prepared the article in question. (A copy of this article was put in evidence. It contained a summary of results of a canvass said to have been made by him in the summer of 1856, of the preferences of electors and others relative to the presidential election then pending.) He sent this article to the editor of the Times, with a letter to the effect that if he did not wish it, to return it, that he might get a market for it elsewhere. The article was published, but had not been paid for. He considered it worth $20.

On cross-examination, he stated, among other things, that he might have sent his letter separately from the article.

The plaintiff having rested, the justice, on motion of defendants, dismissed the complaint; and the plaintiff appealed.

*The plaintiff,* in person.

*Waldo Abbot,* for the respondents.

By the Court, HILTON, J.—The defendants, proprietors of the New York Daily Times, a newspaper printed in this city, pub-

Babcock v. Raymond.

lished at the head of its columns a "Notice to Correspondents," as follows: "Voluntary correspondence, containing important news from all quarters of the world, is solicited; if used, it will be liberally paid for." In September, 1856, and while the probability of the election of Mr. Fremont to the position of President of the United States, was a subject much discussed and commented upon in our newspapers and elsewhere, the plaintiff prepared and sent to the defendants a communication containing statistics, observations, and results, stated to have been derived from an actual canvass by him of the views, principles and preferences of persons of all classes, and both sexes, traveling upon many of the railroads and other routes throughout the country, respecting the several candidates for the presidency, which were to be voted for at the then ensuing general election. The defendants published the communication in their paper. It occupied about half a column of the daily issue of September 13th, 1856, and was preceded by an editorial paragraph assuring the public of the conscientious accuracy, and reliability of the record contained in it.

The object of these statistics and observations, and their publication thus endorsed, seems, from a careful perusal, to have been for the purpose of arriving at certain results which are declared to have been obtained from the facts there stated. And, to show the important character of the communication, in it the particulars are given of 43 separate canvassings of promiscuous companies of persons traveling over different routes and sections of country, which it was alleged established the following extraordinary "results" or conclusions: 1. That among the traveling and intelligent portions of the community, Mr. Fremont had twice as many partisans as both the other candidates, Buchanan and Fillmore, together; while in the rural districts and back settlements—where, it seems left to inference, the people are not so enlightened or intelligent—opinion was pretty equally divided between Fillmore and Buchanan. 2. That, of the voters between 21 and 60, from five-eighths to five-sixths were for Fremont; while, of those over 60, nearly two thirds were for Buchanan.

3. That seven-eighths of all our literary men, professors, &c., and nearly every minister of the gospel, would vote for Fremont; while about four-fifths of all the voters for Buchanan were opposed to the Maine liquor law.　4. That nearly every district in Pennsylvania would go for Fremont, while the state would probably go for Buchanan.　5. That a very large proportion of all the ladies were for Fremont—indeed, it appeared that, in this preference, very many of them were in direct opposition to their husbands, although it was admitted "that Mr. Fillmore's fine personal appearance had not been without its effect." Finally, That these "results" contained "facts of the most cheering character," which may be thus briefly stated:

"That young men are more honest than old ones, and are overwhelmingly for Fremont;" and, as a consequence, the future public virtue and permanency of our republican institutions are secured.　That ministers, men of science, loveliness, (evidently referring to the female sex), virtue, temperance, and intelligence throughout the land, were for Fremont.　The concluding inquiry in the article, "Who can be against us?" assuming all the previous statements and conclusions to be accurate, seems not only unnecessary, but rather difficult to answer.

It will not be denied that, if by the plaintiff's communication these results and conclusions were satisfactorily established in advance of the people expressing their views and preferences in the usual method, it would at the time have been deemed "important news," in the largest sense of that term, to any newspaper or person professing a partiality for the election of Mr. Fremont; and, as by reference to the copy of the defendants' paper containing the article, and attached to the return on this appeal, it appears that they so professed, there seems no reason for doubting that they regarded it as containing not only "important news," but information valuable to their readers.

On the trial before the justice of the First District Court, and from whose judgment this appeal is taken, the plaintiff proved that he prepared the article in consequence of the notice referred to, and sent it to the defendants, requesting, before its publication, if it was

Babcock v. Raymond.

not liked, to return it, that he might get a market for it elsewhere, —thus plainly informing them that it was intended for sale, and, if they used it, he was to be paid what it was reasonably worth. The paper in which it was published, being then put in evidence, afforded a presumption, at least, that the defendants accepted it upon the terms thus proposed, and that in their estimation it contained information of importance and value. It was further proven by the plaintiff that the production of this article cost him ten days of hard labor, and that he considered it worth $20. Apart from this testimony, it is manifest, from the editorial preface, that the defendants believed it to be of some value, and that the facts alleged in it had been conscientiously collected and recorded ; that its publication would be beneficial in showing to the opponents of Mr. Fremont the uselessness of further opposition ; and that the facts and conclusions in it, to use the language of the communication, " augured well for future public virtue, and the permanency of our republican institutions."

This evidence was not in any way controverted, (the defendants offering no testimony), and the justice erred in disregarding it and dismissing the complaint. He was not justified in determining the character and value of the communication by the result of the subsequent election to which it related, and was intended to affect ; nor was he warranted in regarding facts and results, shown to be so accurately and conscientiously collected, as a useless fabrication, intended to influence unsettled or weak minds in favor of Mr. Fremont, and to induce them to vote for him in preference to the other candidates then before the people.

The defendants were, and are still, engaged in the publication of a valuable and highly influential newspaper, intended for the information of, and not for the purpose of misleading, the public ; and, as the plaintiff testifies that he spent much time and labor in preparing the article, it would be obviously unjust to both parties to assume, under all the circumstances, that they did not at the time honestly believe that the facts and results stated in it embodied information which, in their opinion, was not only valuable, but important. It therefore came within the class of cor-

respondence referred to by the defendants in their notice; and, having been used, should be paid for.

The opinion as to its actual value was, as we have seen, formed with reference to the time and labor employed, and was at least presumptive evidence upon the question as to the amount the plaintiff was entitled to recover, and, standing uncontradicted as in this case, might have been regarded as conclusive. *Crane* v *Morris,* 6 Peters, 598; *Kelly* v. *Jackson,* Id. 622.

Judgment reversed.