Mr. Justice Wylie
delivered the opinion of the court:
This was an action by the plaintiff, as executrix óf Philip Otterbach, deceased, to recover from the defendant, surviving partner of the firm of Tillotson P. and Marshall Brown, a *543 balance of $2,500, and interest, claimed to be due on a promissory note of said firm, whereof the following is a copy:
“$5,000. Washington, January 1,1852.
“Ten years after date we promise to pay to George Parker, or order, five thousand dollars, for value received, with interest payable quarter-yearly, and the privilege of reducing the same, from time to time, by installments not less than one thousand dollars at any one time.
(Signed) “TILLOTSON P. BROWN.
“MARSHALL BROWN.”
This note was assigned by its payee to Philip Otterbach, without recourse.
Interest was paid upon the note down to and including July 16,1861. On this last date appears the following indorsement :
“Received of Marshall Brown, on the within note, twenty-five hundred dollars, and one hundred and sixty-two dollars and fifty cents for interest to date.
“G. A. BOHRER,
“For SARAH OTTERBACH,
“Executrix.”
The action was brought on the 28th March, 1874. In addition to the general issue, the defendant pleaded the statute of limitations. Issue was joined upon the plea of the general issue, but to that of the statute of limitations the plaintiff replied that heretofore, to wit, on the 1st day of January, 1872, at said District, and on divers days and times between the last payment made by the defendant on said note, defendant fully and unconditionally acknowledged that he then was and still is indebted on said note to the plaintiff, which she is ready to verify;” and, further, that “on the said 1st Janury, 1872, the defendant, in consideration of the premises, had promised to pay the plaintiff the balance due on said note.”
The execution of the note having been proved, the real contest, at the trial, was thereby restricted to the issue made under the statute of limitations. In this District three years constitute the bar in cases like the present.
*544 At the trial of the cause, George A. Bohrer, a son-in-law of the plaintiff, was- the principal witness in her favor. Bohrer testified that, shortly before the 16th July, 1861, witness was employed by the plaintiff as her agent to collect the said note from the defendant; and, for that purpose, on, said day called upon the defendant and received from him the> sum of $2,500 for principal and $162.50 for interest on account of said note; that said payments were made by the defendant in person, in- a room in the Metropolitan Hotel, of which he was proprietor; and that, on making said payments, the defendant, in the presence of the witness, wrote on theback of said note the receipt thereon indorsed under date of July 16, 1861, which receipt was thereupon signed by the witness. This statement as to having seen the defendant write the said receipt was re-iterated by the witness.’7
On the-other hand, the defendant proved by two witnesses, as well as his own testimony, that the indorsement of July 16, 1861, was not written by the defendant, but was in the? handwriting of one Ourand, who was, at the time, a clerk of the defendant; and Ourand himself testified that he paid the money to Bohrer, at said Bohrer’s place of business, at the Navy Yard, and not at the hotel; but, on cross-examination, stated he would not have paid out a sum of that magnitude except in obedience to Mr. Brown’s instructions.
Upon this evidence from both sides we are convinced that the money referred to in that receipt was in fact paid; but that Bohrer’s memory must have been at fault when he stated that it was paid to him by Mr. Brown in person, at the Met-' ropolitan Hotel, and that the body of the receipt was written by Brown. In all these particulars the weight of evidence is heavily against the testimony of the witness. Except for the purpose of determining the question involved in the defendant’s sixth prayer, which was refused by the court, the controversy over this matter is of no consequence in the present case; for a payment made in 1861, in itself, would not be even admissible as evidence under the plea of limitations.
The sixth prayer of the defendant was this: “If the jury shall find that the re-iterated statement of the witness Bohrer to the effect that he saw the defendant write out the receipt *545 indorsed upon said note, and dated July 16, 1861, is untrue, and such untruth is placed beyond reasonable doubt, then the jury are instructed that the residue of the testimony of said witness ought to be discarded altogether, or acted upon with great caution and distrust.”
The instruction, if granted, would have expressed an opinion of the court as to the weight of the testimony on the one side and on the other. But, in the language of the Supreme Court in Crane vs. The Lessee of Morris, 6 Pet., 615, “ this instruction, so asked, is not upon any matter of law, but upon the mere weight of evidence, which the court was not bound to give, and which was matter proper for the consideration of the jury.” In Consequa vs. Willings, Pet. C. C., 225, it was said that “the court may give an opinion to the jury on the weight of evidence, or it may decline to do so.”
We discover, therefore, no error in the refusal of the court to grant this instruction. The refusal of the court to grant the defendant’s first and third instructions, however, involves the merits of this controversy, and was, in our judgment, altogether erroneous. It will be remem bered that the last payment upon the note in question was made on the 16th of July, 1861, and that the present action was brought March 28,1871. The witness Bohrer testified that, subsequently to the date of the said payment, he called on the defendant repeatedly, and demanded payment, as often as once a year, on the average, up to January, 1873; that on none of these occasions had defendant denied the debt, but would say that he had no funds, or had use for all his funds, or had to pay money to Mrs. Maury, or was out of money, or make excuses of a similar character; and that early in 1873, in reply to a demand for payment, the defendant said that he would go to see Mrs. Otterbach, or would send his son to settle or arrange the business; that late in this year the defendant for the first time denied liability for the debt, and that thereupon the witness placed the claim in the hands of his attorney for collection. Witness could not give the times or dates of aiiy of these interviews, nor the language used by the defendant; but stated that, according to his own understanding and belief as to what passed on those occasions, the defendant has promised to pay what was due on the note whenever he *546 should have the money convenient. The plaintiff herself and her daughter, Mrs. Young, testified that, some time in the early part of the year 1873, a son of the defendant called upon the plaintiff with a message from his father to the effect that the latter had been sick, but intended to come to see her when he got well. And this was all the evidence produced by the plaintiff to prove an acknowledgment or new promise, to take the claim out of the statute of limitations. It is but just to say that bcth Mr. Brown and his son were examined, aud denied with great emphasis the statements made by Mr. Bohrer and the other two witnesses to which we have referred. The court was requested to instruct the jury, in substance, that the evidence above recited, if believed, was not sufficient in law to establish such a new promise, or such an acknowledgment of a present liability on the part of the defendant, Brown, as would maintain the present action. The court granted the instructions, but with this qualification, “ without the jury shall find in the said declarations an acknowledgment of the claim as a subsisting debt on the part of the defendant to the plaintiff.” It appears to us that the qualification of the legal proposition given by the court, in this instance, was altogether repugnant to the proposition itself. According to the proper legal import of its language the court instructed the jury that the testimony of Bohrer was not sufficient to take the case out'of the statute, but that the jury, notwithstanding, if they thought fit, might pay no regard to the opinion of the court on this point; and the jury made use of this privilege, and did infer the making of a new promise from language which the court had told them was not sufficient for that purpose. We think that the instruction No. 3 was right, and ought to have been granted without the repugnant qualification which enabled the jury thus to overrule the court on a point of law. The case of Bell vs. Morrison, 1 Pet., 351, is, in our judgment, decisive of this. The rule, as settled by that case, is this: That “if there be no express promise, but a promise to be raised by implication of law from the acknowledgment of the party, such acknowledgment ought to contain an unqualified and direct admission of a present subsisting debt which the party is liable and willing to pay. If there be ac *547 companyiug circumstances which repel the presumption of a promise or intention to pay; if the expression be equivocal, vague, or indeterminate, leading to no certain conclusion, but at best to probable inferences, which may affect different minds in different ways, such testimony ought not to go to the j ury as evidence of a new promise to revive the cause of action.”
After laying down the rule of law in the terms just quoted, Mr. Justice Story proceeds:
“It may be that in this manner an honest debt may sometimes be lost, but many unfounded recoveries will be prevented ; and, viewing the statute in the same light in which it was viewed by English judges at an early period, as a beneficial law, on which the security of all men depends, we think its provisions ought not to be lightly overturned, and that no creditor has a right to complain of a strict construction, since it is only by his own fault and laches that it can be brought to bear injuriously upon him.”
In this case, the evidence of acknowledgment offered by the plaintiff to take the case out of the statute was much stronger than that in favor of plaintiff in the present action. Witness testified that he went with Bell, the plaintiff, to call upon Morrison, the defendant; that Morrison stated that the books aud papers relative to the plaintiff’s claim were in the hands of Jonathan Taylor, (one of the defendants,) which put it out of his power to settle the account at that time, and expressed a willingness, but for that reason, to settle with the plaintiff. The plaintiff bade him good-by, and declared that-that was the last time he should ever apply for a settlement of his account. The plaintiff then left the house of Morrison and returned with witness to his house, where he remained until after breakfast next day; that shortly after breakfast Morrison came to the house of witness, and said to Bell (the plaintiff) that he was very anxious that his (the plaintiff’s) account should be settled, saying that he was getting old and did not like to have such things hanging over him, and wished to have the business settled and be done with it. He then proposed to give the plaintiff $7,000 and close the business-The plaintiff refused to take it, and they parted. In a letter subsequently written, Morrison said to Bell, “ I wish whatever is due you should be paid. It is not our wish to keep *548 from you whatever may be your just due. We have sent for the company books some two or three weeks since; they will come to Louisville by water, and, on you and Mr. Wheatley being there, I have no doubt but your account can be adjusted. I wish your account settled; I have no hesitation in saying on your coming here it will be done.” Other evidence of the like import was given, which we think it unnecessary to quote.
The court below, in that case, instructed the jury that the evidence was not sufficient to authorize them to infer an acknowledgment to take the case out of the statute, and that decision was affirmed' by the Supreme Court, the latter court declaring, as we have seen, that the evidence in question was not competent even to go to the jury for that purpose.
It is error, therefore, in a court to allow the jury to infer a new promise from evidence which the court knows to be insufficient, according to the principles of law. The evidence when offered ought to be excluded; or, if given, the jury should- be firmly instructed that it is not competent.
The judgment is to be reversed and a new trial awarded.