## No. V.

### HENRY RAQUET v. GEORGE A. NIXON.

(See Note 11.)

*Appeal from Nacogdoches County.*

HEMPHILL, CHIEF JUSTICE.—This was an action of attachment instituted by the appellant against the appellee, in the month of July, 1838. The writ of attachment issued, and was executed on the property of the defendant. The record furnishes no evidence that a citation to the defendant was issued or served in any of the various modes pointed out by law. The cause was not called before the fall term of the court in 1839, when a motion was made to dismiss the attachment on three grounds, which may, however, be resolved into one, viz., "that the petition and affidavit were not sufficient in law to obtain the writ." The motion being overruled, the cause was set for trial next day. No answer, or pleading to the merits, appears from the record to have been filed by the defendant. On the next day the defendant moved to dismiss the cause for want of service of a citation, and the said motion having been duly considered was granted by the court. The plaintiff appealed and filed his bill of exceptions.

The questions which naturally arise here are whether citation to the person was required by law; and if so, whether the necessity thereof was not waived by the acts of the defendant as they are stated in the record. At the institution of this suit the laws of Louisiana in relation to attachments were in force in this Republic, and by them it was regulated

370; Wescott v. Menard, Dal., 503; Darly v. Chevallier, Dal., 555; Hansborough v. Towns, 1 T., 58; Crosby v. Houston, 1 T., 203; Burton v. Anderson, 1 T., 93; O'Connor v. Towns, 1 T., 107; Jones v. Black, 1 T., 527; Cloud v. Smith, 1 T., 611; Swenson v. Walker, 3 T., 93, 110; Hopkins v. Donaho, 4 T., 336; Coles v. Perry, 7 T., 109; Davenport v. Lackie, 8 T., 351; Pierson v. Burney, 15 T., 272; Shelby v. Burtis, 18 T., 644; Bullock v. Hayter, 24 T., 9;

and must be decided. From an examination of those laws, it appears that in suits in attachment a citation to the person is necessary, and indeed seems to be the basis on which the other proceedings in the case are supported. By article 251 of the Code of Practice a citation is directed to issue to the defendant to answer the petition as in ordinary cases. By article 253, the sheriff must serve such citation, first, on the person of the defendant, or at his domicile if he has one in the place, or if he be about to leave the State; second, at the place where the defendant has resided last, if he had a domicile in the place, and conceal himself to avoid being cited. By article 254, if the defendant has no known place of residence, conceal his person, be absent, or reside out of the State, the sheriff is directed to serve the attachment and citation by affixing copies thereof on the door of the parish church or of the courtroom, etc. It seems, then, that a citation is required, and a mode is pointed out for the service thereof in every possible contingency in which the writ of attachment could be obtained. The action in fact is one of mixed character—in personam as well as in rem. By the course of the decisions in Louisiana, where the citation is served in any of the modes pointed out by the code—other than that of publication— the suit is regarded as in personam, the attachment being a mere incidental proceeding to secure the rights of the plaintiff. Where the party is cited by publication the suit is considered as in rem, rather than in personam. But whatever distinctions of this character may be drawn, they do not affect the process of citation, for in all cases of attachment the injunction of the law is positive that citation shall issue and be served. The decisions of the courts have been uniform, that the want of a citation, in the mode prescribed by law, is a fatal objection to the proceedings in attachment—that without it, they are illegal, and the judgment itself in favor of the plaintiff an absolute nullity. 11 M. R., 276; 2 N. S., 52. But the requisite of citation is the privilege of the defendant, which he may waive in express terms, or his acts may imply a waiver thereof. In McMikin v. Smith, 5 N. S., p. 429, it is laid down that the court will presume nothing in relation to a party's being cited. Constructive and even actual notice of a suit will not do, unless given in the manner prescribed by law; but the defect of the want of a citation will be cured by appearance and pleading to the merits. Was the motion, then, of the defendant to dissolve the attachment on account of the insufficiency of the affidavit and petition, such a plea to the merits as cured the want of citation? It does not so appear to this court. A motion to dissolve an attachment is in the nature of a plea in abatement. From its nature it requires to be pleaded in

Robinson v. Mattison, 25 T. Supp., 451; Elliot v. Mitchell, 28 T., 105; Allen v. Taylor, 31 T., 124; Andrews v. Jones, 36 T., 149; Hughes v. Roper, 42 T., 116; Carter v. Eames, 44 T., 544; Johnson v. Blunt, 48 T., 38; Ragsdale v. Robinson, 48 T., 379; Life Ins. Co. v. Ray, 50 T., 511; Urquhart v. Womack, 53 T., 616; Brooks v. Clark, 57 T., 105; Caruth v. Grigsby, 57 T., 259; Farley v. Deslonde, 58 T., 588; Long v. Garnett, 59 T., 229; Langton v. Marshall, 59 T., 269; Flanagan v. Pearson, 61 T., 302; Gaines v. Nat. Exchange Bank, 64 T., 18; Ford v. Cowen, 64 T., 129; Blum v. Golden, 66 T., 621; Cannon v. Can-

limine litis, or before issue is joined on the merits, and therefore repels the idea that in itself it constitutes a pleading to the merits of the case. There is nothing, then, in a motion of that character which would preclude the defendant from having the attachment dismissed for the want of a citation. He has waived no right. His attempt in fact was to show that the plaintiff violated the rights, guaranteed to him by the laws, by illegal proceedings in obtaining the attachment. Nor is there other matter in the record sufficient to justify the presumption that a plea to the merits was filed. It states, indeed, that after the motion to dissolve the attachment was overruled, the case was set for trial the next day. Had the trial proceeded, and judgment been rendered, this court might have presumed that such pleadings were entered as would justify the rendition of the judgment; but in the absence of the actual entry of an issue on the merits, and where the judge below entertained a motion which would have been precluded by such an issue, we are bound to believe that there was nothing in the pleadings which would prohibit the court below from entertaining the motion. We are therefore of opinion that the court did not err in dismissing the cause for the want of a service of citation.

Under laws where the suit in attachment is of the mixed character before described, the service of a citation in some of the modes pointed out by the law is a right indispensable to the security of the defendant. Proceedings in attachment, even when the rights of the debtor as secured by the law are held sacred, are oppressive. The property of the defendant is seized before the rights of the parties are adjudicated, and these are decided generally in the absence of the defendant. While the law derogates from the rights of one party, it confers privileges on the other. The creditor can not complain that a law of that character should be strictly construed, and that if he attempt to avail himself of its benefits, he should be compelled to comply with all those formalities which it has deemed essential to the security of the debtor.

It is ordered, adjudged and decreed that the appeal be dismissed, and that the appellee recover his costs of the appellant in this court on this behalf expended.

*Dismissed.*

non, 66 T., 682; Tevis v. French, 71 T., 59; Ellis v. Garvey, 76 T., 371; Shornick v. Bennett, 77 T., 244; Brown v. Perez, 79 T., 157; Cason v. Conner, 83 T., 26; Hanrick v. Curley, 93 T., 458; Lytle v. Custead, 4 T. C. A., 490; Baker v. Collins, 4 T. C. A., 520; Spencer v. James, 10 T. C. A., 327; Eastham v. Sims, 11 T. C. A., 133; Prestage v. Loving, 1 App. C., sec. 707; Adams v. Duggan, 1 App. C., sec. 1268; Sears v. Green, 1 U. C., 734. When the record is silent, it will be presumed that sufficient evidence was before the jury to warrant their verdict. Campbell v. Skidmore, 1 T., 475; Portis v. Hill, 30 T., 529; Bailey v. Hearne, 1 App. C., sec. 969; Bradford v. Mann, 1 U. C., 228; Alexander v. Mulhall, 1 U. C., 769; Darragh v. Kaufman, 2 U. C., 97. The jury are presumed to find with reference to the facts in the pleadings and the charge of the court. Darden v. Mathews, 22 T., 320; Patterson v. Allen, 50 T., 23; Traylor v. Townsend, 61 T., 144; Dodd v. Gaines, 82 T., 429; Evans v. Revees, 6 T. C. A., 254; Ackerman v. Ackerman, 22 T. C. A., 612; Clendenning v. Mathews, 1 App. C., sec. 905; Marshall v. State, 4 T. App., 549; Hutto v. State, 7 T. App., 44; Vincent v. State, 10 T. App., 330. The same sanctity is not given to verdicts when the evidence is by deposition, as when it is oral. Strozier v. Lewey, 3 App. C., sec. 129. Presumptions are indulged to

## No. VI.

### JOHN CARTWRIGHT v. JOHN S. ROBERTS.

*On appeal.*

HEMPHILL, CHIEF JUSTICE.—This action was instituted to recover the amount of a promissory note of hand for $600. It was pleaded in bar of said recovery that the note was drawn in a foreign country and could not therefore be sued on in the tribunals of this Republic. The plea was overruled and judgment given for the plaintiff. Immediately succeeding the rendition of the judgment, the record proceeds as follows, viz: "It is further ordered and adjudged by the court, under the statute in such cases made and provided, that the points of law in this case be certified to the Supreme Court, the counsel for both parties moving and assenting thereto." In the above order, reference is made to some statute of the Republic, but we know of none which authorizes points to be reserved for the decision of the Supreme Court, except the forty-third section of the act organizing the district courts; in which a judge of any district court is permitted at his discretion, in any *criminal* case, to reserve a question of law for the consideration and discretion of the Supreme Court at the next succeeding term thereof. This act is confined in its terms to points of law in criminal cases, and can not be extended to civil actions. The mode in which appeals may be taken are prescribed in the statutes of the Republic, and must be conformed to by parties desirous of appealing. Unless the case is properly before this tribunal, we can not take cognizance thereof; and there being no provision of the laws which would authorize this case to be brought up in the manner in which it has been certified to the court, it is not incumbent upon us to take it into consideration. We are therefore of opinion that the same ought to be dismissed; and it is hereby ordered and adjudged accordingly.

*Dismissed.*

## No. VII.

### CHARLES REECE v. JAMES SMITH.

*Appeal from Travis County.*

HUTCHINSON, JUSTICE.—The appellant, as administrator of Milton Hicks, sued the appellee to recover the amount of the bond of the latter to the intestate of August 7, 1839, for the payment on the first of December then next of "one thousand dollars—Texas money." Ver-

support a judgment when the trial is upon an agreed statement of facts. Henderson v. Samuels, 7 T. C. A., 351.

**Note 10.**—Board of Land Commissioners v. Reily, Assignee, p. 381.

Laws to detect fraudulent land certificates are constitutional. Johns v. Republic, Dal., 621; Hosner v. De Young, 1 T., 764; Peck v. Moody, 23 T., 93;

dict was given specially for the plaintiff, for $1000 in Texas money, with interest from December 1, 1839; that the jury believed it was the intention of the parties that Texas promissory notes should be received in payment, and at that time they were 33 1-3 cents in the dollar. The plaintiff moved for judgment for $1000, lawful money with interest; but the court rendered judgment on the verdict for $333 1-3 with interest and costs.

The cause is submitted. The only question that seems to have been made below is in regard to the force and effect of the bond as to the amount demandable upon its face. By the instrument, the obligor made but one stipulation, and that was to pay $1000 Texas money. The Republic has indeed a constitutional standard of money, but she has not yet established a mint, and has issued a vast amount of her bonds and notes to serve as a currency in the absence of the medium contemplated by the Constitution as lawful money. In common speech those bonds and notes are designated and meant by the terms *Texas money,* or Texas promissory notes, or some equivalent words. It was therefore properly left to the jury to find the value of such currency in par or lawful money. The court below should have instructed the jury as to the legal import of the bond; but as the jury in their verdict give it a proper interpretation, it was correctly left to them to find the value, or ratio of the value of the inferior money stipulated.

Instruments often contain primary and occasional stipulations. Thus if the bond had been to pay so much money without any qualification as to its kind, and then had contained a distinct clause in favor of the contractor, allowing him to pay in a currency other than lawful money, the effect of the instrument might deserve a more serious consideration— but that is not now before us.

The judgment below must be affirmed.

This cause coming on to be heard on the transcript of the record in the District Court of Travis County, and it being inspected, because it seems to the court here that there is no error therein, it is therefore considered by the court here that the judgment of the district court be in all things affirmed, and that the appellee recover of the appellant his costs in this behalf in this court expended. Let this judgment be certified below for execution.

*Affirmed.*

Sherwood v. Fleming, 25 T. Supp., 408; Durrett v. Crosby, 28 T., 687; League v. De Young, 11 How., 185. Act of November 29, 1871 (Gammel's Laws of Texas, vol. 7, p. 47), providing for survey and return of general land certificates, is constitutional. Snider v. I. & G. N. Ry. Co., 52 T., 306. A colonist was not entitled to a grant as head of a family, unless his family was resident in Texas. Land Commrs. v. Bell, Dal., 366; Land Commrs. v. Walling, Dal., 524; Republic v. Skidmore, Dal., 581; Langford v. Republic, Dal., 588; Republic v. Inglish, Dal., 608; Johns v. Republic, Dal., 621; Grooms v. State, 1 T., 568; Republic v. Skidmore, 2 T., 261; Tichnor v. State, 2 T., 269; Lewis v. Ames, 44 T., 319, 345; Lott v. King, 79 T., 292; Hill v. Moore, 85 T., 335; Byrn v. Kleas, 15 T. C. A., 205; Union Beef Co. v. Thurman, 70 Fed. Rep., 965. An unmarried colonist, under twenty-one years of age, was not entitled to a headright grant. Lockhart v. Republic, 2 T., 127. But it will be presumed from the fact that a headright certificate was granted by the proper

## VIII.

## B. S. GRAYSON V. J. CUMMINS.

*New trial awarded.*

HUTCHINSON, JUSTICE.—The counsel of the appellant submits this cause on a motion to remand it for new trial and a more definite decision. The transcript sent is certified as containing a full copy of the record in the court below; and there being no affidavit of diminution, we can not award a certiorari for a more perfect transcript. Indeed, on inspection, we are persuaded the transcript before us contains all that can be found pertaining to the cause in the court below.

The transcript itself is so very imperfect and the entries made of what may have been the proceedings and judgment so squalid and deficient in respect of substance, that we are unwilling to permit the record, as it now is below, to remain a perpetual memorial of the adjustment of the rights involved, and feel it due to the safe administration of justice to remand the case for another trial, with instructions to the district court so to direct and control its clerk that the future progress in it may be put on the record in some shape to indicate what shall have been done.

In regard to the transcript before us, it does not show when the petition was filed; whether the copy of Cummins' title papers was exhibited with the petition; when the plea was filed; whether what appears to be the sheriff's return was the return on the citation; and the allowance of the appeal, if entered on the minutes, and appeal bond, if any was given, are not copied into the transcript. A transcript can not be perfect without introducing after the caption, in the order of their occurrence, the petition and documents exhibited, if any; the process and return; the plea, answer, and other pleadings; the intermediate orders of the court in the case; and lastly the postea and judgment, with the grant of appeal and the appeal bond. Each of these should be preceded by an introductory statement connecting it with the cause, or showing the time when made or filed. This duty is devolved on the clerk as the sworn amanuensis of the court, the keeper of its archives, and the officer who can alone make accurately a history of the case. Until after final judgment the record is constituted by the pleadings, process, returns on the process and orders of the court, as connected by the clerk's numbers, docket and memoranda. After judgment, he is to transfer the whole into a complete record book; and that he can only properly do by the introduction of each part in chronological order with the conjunctive matter of his own, derived from his memoranda on the papers and dockets. The names of the parties, being

authority, that the grantee was the head of a family, and evidence is not admissible in a collateral proceeding to show that he was not married and that his family was not in Texas. Johnston v. Smith, 21 T., 722; Bowmer v. Hicks, 22 T., 155; Howard v. Colquhoun, 28 T., 134; Burkett v. Scarborough, 59 T., 495; Capp v. Terry, 75 T., 391; Boone v. Hulsey, 71 T., 176; Hill v. Moore, 85 T., 335; Byers v. Wallace, 87 T., 503. Grant is valid, if the grantee

introduced by the pleadings, need not be repeated by way of caption. In England the record was begun on a parchment roll and enlarged on that roll as the proceedings occurred. When the case was ended, the last step was put on the roll and it was filed, to remain as the veritable record. In this Republic the complete record is to supply the absence of the parchment roll; so that here the complete record, and a transcript whenever required, should be ever the same, the latter being an exact exemplification of the former, as a copy of the roll in England is a transcript of the record. We do not design by these remarks to intimate that the imperfections of the transcript above noticed are such as to require a reversal of the judgment; but we notice them with regret and in the hope they will be hereafter avoided in every part of the Republic. The transcript from other counties are in most instances liable to similar and some to a severer criticism.

The vice in the case in review does not so much appear in the manner of the copy transmitted here, but is found in the postea and judgment. Those are presented in these remarkable words: "Again come to be heard,—parties appeared again and answered ready for trial; Motion by Defendant's Attorney, to exclude testimony upon reasons, but first, &c., whereupon the case was submitted to the Jury, S. & E., for the purpose retired and returned the following verdict, we the Jury find for the Defendant, L. M. B. Ryne, foreman; whereupon the Court ordered adjudged and decreed, plaintiff, pay costs." Was a jury elected, tried and sworn to try the issue joined? Was it a jury of twelve, or of any less number? Who were they? To whom was the league of land in controversy adjudged? Was there even a judgment against the plaintiff for costs? To these questions the postea and judgment give no certain answer. In a country whose Constitution has adopted the institution of jury trial and required it to be preserved inviolate, whatever theories may be indulged for or against its utility, the appellate court is bound to see the object of the constituent law as well as the whole concurrent legislation on the subject duly observed. If we examine the revised records of England and of the North American United States, it is apprehended that such a passing notice of the jury trying a case, however trivial, was never considered sufficient. It should have appeared that a jury, naming twelve persons, were elected, tried and sworn well and truly to try the issue, who, on their oath, found the verdict. At the farthest relaxation it ought to appear that a jury of lawful men were sworn to try the cause, and on their oath gave the verdict. In several respects it may be import-

in good faith, intended to move his family to Texas. Republic v. Young, Dal., 464; State v. Skidmore, 5 T., 469; Russell v. Randolph, 11 T., 460. Under Act of December 14, 1837 (Gammel's Laws of Texas, vol. 1, p. 1404), it was necessary to prove in court, the same facts which the statute required for the satisfaction of the Board of Land Commissioners. Republic v. Skidmore, Dal., 581; Johns v. Republic, Dal., 621; Land Commissioners v. Raguet, 2 T., 98. Claimants were required, prior to Act of February 2, 1848 (Gammel's Laws of Texas, vol. 3, p. 18), to prove same facts under section 11 of Act of February 4, 1841 (Gammel's Laws of Texas, vol. 2, p. 635). Tichner v. State, 2 T., 269; State v. Mason, 2 T., 315; Linn v. State, 2 T., 317. Titles issued by alcaldes and commissioners after closing of Land Office by Act of

ant to the parties or some of them to have the names of the jurors on the record, and it is conformable to the precedents and to the safest practice to insert them. It has been often ruled that a less number than twelve is no jury, so that any local or occasional usage of consenting to a less number is reprehensible as a course calculated to bring into disuse and disrepute a mode of trial of controverted facts, identified with the greater cause of civil liberty.

It is obvious in this case that the district court tried it and gave judgment; and it is equally clear the clerk failed to make even a tolerable entry of the judgment. When we are satisfied that a lawful jury came, were sworn and on their oath rendered verdict, we are to entertain all reasonable presumptions in support of it; that is to say, that they acted on sufficient evidence and proceeded with discernment and honesty; and these presumptions will sustain it in the absence of something to countervail them. So too in regard to a judgment of a court of general jurisdiction; it will be sustained unless there be something apparent to show its illegality or injustice; but then, as a revising tribunal, we must know, and know too from the judgment itself, what is adjudged and in whose favor, as also against whom. This is not done in the instance on hand. It is nevertheless obvious that in point of fact the court acted definitively; for in the certificate of the judge of the question of evidence made before him, he states that the defendant appealed. The case is therefore in this condition: there is no judgment below whereon final process for either party can properly issue, and if on the question raised in the judge's certficate we were to concur with him, there would be no legitimate judgment to be affirmed. We might, if the judge had erred in his opinion, reverse the judgment, or more properly the supposed verdict, and award a venire facias de novo. Under these circumstances, we think it best not to decide the question raised, but remand the case for a new trial, without further directions than to have the next postea and judgment entered conformably to the requisitions of law. We are disinclined to strike the case from the docket or to dismiss the appeal, because that might leave the appellant precluded, or at least prejudiced, by the unskillful entries of the clerk and the casualty of their escaping the observation of the court below. In the meantime the possession of the appellee and his right, whatever it may be, will remain uninterrupted.

This cause being submitted on the motion of the appellant to remand the same for new trial, and the transcript of the record below being

Consultation on November 13, 1835 (Gammel's Laws of Texas, vol. 1, p. 541), which took effect immediately on adoption, are null and void. Donaldson v. Dodd, 12 T., 381; Spier v. Laman, 27 T., 205; Parker v. Bains, 59 T., 15. If the title was actually issued before November 13, 1835, making out and de-.livering the testimonio shortly afterwards did not invalidate the title. Houston v. Blythe, 60 T., 506. Holders of orders for surveys and headright certificates, issued prior to November 13, 1835, could only establish their claims in the mode prescribed by Act of December 14, 1837 (Gammel's Laws of Texas, vol. 1, p. 1404), upon proof of facts enumerated in section 12. Land Commissioners v. Walling, Dal., 524; Republic v. Skidmore, Dal., 581; Republic v. Inglish, Dal., 608; Johns v. Republic, Dal., 621; Jones v. Menard, 1 T., 771; Trimble v. Smithers, 1 T., 790; Land Commissioners v. Raguet, 2 T.,

inspected, because it seems to the court that the entries of the jury, verdict and judgment in this behalf in the court below are too vague and uncertain either to satisfy the court here whether a regular trial was had, or what judgment was rendered, it is therefore considered by the court here that the postea and judgment below be set aside, and that this cause be remanded to the court below, that a new trial be had therein, and that the appellant pay to the appellee the costs of this case in this court expended, for which execution below may issue.

*Remanded.*

## No. IX.

### ISAAC GUEST v. JOHN GUEST.

#### (See Note 12.)

*New trial awarded.*

SCURRY, JUSTICE.—In this case it appears from the record that judgment of nonsuit was entered by the court below upon motion of the defendant. The word nonsuit is technical in its meaning, and alone specifies that it is by the action of a party bringing a suit that such judgment can be rendered. Nonsuit can be taken by the plaintiff below; but neither the district court nor any other court has the power to *compel* the party to take a nonsuit.

A party may take a judgment by nonsuit if he chooses, but the court can not force him to do so. 1 Pet., 471.

The district court has no power whatsoever to order a peremptory nonsuit. 6 Pet., 598.

Nonsuit may be entered by the court, but not without the acquiescence and consent of the plaintiff. 1 Pet., 491.

It is therefore the opinion of the court, that this cause be remanded to the court below, and that the judgment of nonsuit be set aside and a new trial awarded.

## No. X.

### BOARD OF LAND COMMISSIONERS OF RED RIVER COUNTY v. ELIZABETH HERRING, ALIAS ELIZABETH WATSON, BY HER HUSBAND, JNO. S. HERRING.

*Appeal from Red River County.*

HEMPHILL, CHIEF JUSTICE.—Elizabeth Herring, alias Elizabeth Watson, by and through her husband John S. Herring, on the 1st day of March, 1838, applied to the board of land commissioners for the county

---

98; Land Commissioners v. Riley, 3 T., 237; Capp v. Terry, 75 T., 391. All certificates returned by commissioners as genuine, but not recommended on account of want of oath required by section 12 of Act of December 14, 1837,

of Red River for a certificate for a league and labor of land, to which she alleged she was entitled as a citizen of the Republic of Texas and the head of a family at the date of the declaration of independence. The board refused her application, and on appeal therefrom to the district court, the judgment of the board of land commissioners was reversed and a certificate or order of survey for a league and labor of land was ordered to issue to the said Elizabeth. From this judgment the board of land commissioners appealed; and the following is the statement of facts accompanying the transcript of the record sent up to this court: "That Elizbeth Watson emigrated to this government in the year 1833, and that William Watson died previous to the declaration of independence, the precise time not proved. Elizabeth Watson was a feme sole, and resided here at the date of the declaration of independence, the head of a family, and that she had never received any land, as a colonist, or emigrant, from the Government of Texas. That she had continued to reside here and is now a resident; and it was further proved that she resided as a member of William Watson's family in the year 1835; and that she intermarried with John S. Herring after the date of the declaration of independence." From the view which the court has taken of this case it will be unnecessary to notice any of the grounds assumed, whether against or in support of the judgment of the district court. The facts as set forth in the above statement are involved in much obscurity. One William Watson is mentioned, but what connection there is, if any, between him and the appellee is not stated and is left entirely to vague conjecture. The appellee is described as a feme sole, and the "head of a family." From this description the court can not ascertain with precision whether she was a widow, or a single woman who had never been married, though the term is generally appropriated to single women who have not been married; nor can we conjecture how her family was constituted. The word "family" has not been judicially defined, and in common acceptation has received very variant constructions. The court can not decide whether the appellee had a family, until it is informed in what manner it was constituted, whether by servants, by children, and if children, whether they were legitimate or illegitimate, or in what mode; for by these and various other modes of uniting several persons under one controlling head, it has been supposed a family may be formed. From the above and other instances of uncertainty in the facts as furnished to us in the above case, it is feared that any decision made by this court might operate injustice

---

were validated and directed to be patented by Act of January 19, 1841 (Gammel's Laws of Texas, vol. 2, p. 528). Whitehead v. Foley, 28 T., 1; Spofford v. Bennett, 55 T., 293. Under Act of February 5, 1840 (Gammel's Laws of Texas, vol. 2, p. 335), patents could only issue on certificate of recommendation from Board of Land Commissioners, and holders of unrecommended land certificates had no standing in court without it. Norton v. Land Commissioners, 2 T., 357; Bracken v. Wells, 3 T., 88, 90; Kemper v. Victoria, 3 T., 135; Miller v. Brownson, 50 T., 583. All surveys supported by recommended certificates valid; without them, invalid. Warren v. Shuman, 5 T., 441; Scott v. Mather, 14 T., 235; Whitehead v. Foley, 28 T., 268. Headright certificate is not color of title, unless recommended. Horton v. Crawford, 10 T., 382; Whitehead v. Foley, 28 T., 268. Prohibition in Act of February

to one or other of the parties. It is therefore ordered and decreed that the cause be remanded to the court below for a new trial, in order that the facts in relation to the said case may be fully and clearly established and set forth.

*Remanded.*

## No. XI.

### JOHN MORTON v. GORDON AND ALLEY, ADMINISTRATORS.

#### (See Note 13.)

*On appeal.*

BAYLOR, JUSTICE.—In this case Gordon and Alley, as administrators of Albert D. Duncan, deceased, instituted their suit in the court below to recover of Morton, the appellant, the sum of $124.18, alleged to have been due and owing to Duncan in his lifetime by Morton. To the plaintiffs' petition setting forth their demand, Morton filed his plea of set-off, averring that Duncan before his death was justly indebted to him in the sum of $101. To this plea the plaintiffs demurred. The court sustained the demurrer and, as both parties admitted the justice of each other's claim, gave judgment for the plaintiffs.

A bill of exceptions taken in the case also presents the same point for the consideration of this court which arose on the demurrer; and that is, "Does the act passed February 5, A. D. 1840, regulating the mode of settling the estates of intestate persons, preclude the defendant from the benefit of his plea of set-off, allowed as he contends by the act passed also on February 5, A. D. 1840 ?"

Before we are permitted to decide this point, although the parties have consented to the jurisdiction of this court, we feel bound to notice the question of jurisdiction as one of great moment to the jurisprudence of this country. Consent may do away error, but it is well settled that it can not give jurisdiction. By the act organizing the district courts, the right to appeal is expressly prohibited, unless the sum in controversy amounts to $300. Here the record shows that the amount in controversy was for a less sum. Hence if we entertain jurisdiction, our power to do so must be derived from some other source than the act alluded to, or the consent given.

It is urged that so much of the act of Congress as restricts the right of the citizen to appeal from the District to the Supreme Court is unconstitutional, and that this tribunal has the power to hear and

5, 1840, against surveys on unrecommended certificates after May 1, 1840, did not legalize surveys made either prior or subsequently on unrecommended certificates. Warren v. Shuman, 5 T., 441. It seems that surveys on genuine headright certificates are valid, though not recommended by commissioners. Howard v. Perry, 7 T., 259; Hart v. Gibbons, 14 T., 213. But under Act of January 29, 1840 (Gammel's Laws of Texas, vol. 2, p. 313), authority to issue patents on first class headright certificates was based on recommendation. Miller v. Brownson, 50 T., 583. Under extension of time allowed by Con-

determine all causes which may originate and have been decided in the district courts.

If this position be correct, then we can legitimately consider and determine the point arising on the demurrer.

We think the power here contended for justly belongs to this tribunal, and in coming to this conclusion we have not been unmindful of the magnitude of the principles involved, and the respect due to the popular branch of the government.

We have felt the delicacy and embarrassment of this question, and, if we were permitted, from these and many other considerations (as the amount in controversy is small) we would be induced to pass it over. "Fortunately, however, for the people, the function of the judiciary in deciding constitutional questions is not one which it is at liberty to decline. While it is bound not to take jurisdiction if it should not, it is equally true that it must take jurisdiction if it should; it can not, as the Legislature may, avoid a measure because it approaches the confines of the Constitution; it can not pass it by because it is doubtful; with whatever doubt, with whatever difficulties a case may be attended, it must decide it when it arises in judgment. It has no more right to decline the exercise of a jurisdiction which is given than to usurp that which it not given; the one or the other would be treason to the Constitution."

With these few preliminary remarks, we proceed to give some of the reasons which have induced us to decide in favor of the power claimed for this court. We have searched in vain for the express power delegated to Congress in the Constitution to enact the restriction. If it has the power then it must be by implication alone; and by implication perhaps, Congress have the power to restrict the right of appeal from the inferior to the district courts.

If we compare the Constitution of this country with that of the United States and most of the States, we shall find this remarkable difference: the Constitution of the United States, for example, after speaking of the appellate jurisdiction of the Supreme Court, expressly states that it is to be exercised *with such exceptions and under such regulations as the Congress shall make.* Here the power to restrict is clearly given, and under this grant of power Congress has said no appeal from the circuit court shall be allowed unless the amount in controversy exceeds $2000. If our Constitution had contained similar expressions, the right to restrict would have been placed beyond doubt. But were these expressions casually dropped from the circumstance that the Constitution was formed in the midst of a revolution, or were they

stitution of 1845, a survey made on an unrecommended certificate prior to January 1, 1844, suit to establish claim could be maintained in 1847. Lewis v. Mixon, 11 T., 564; Hart v. Gibbons, 14 T., 213; Scott v. Mather, 14 T., 235. Under Act of February 7, 1860 (Gammel's Laws of Texas vol. 4, p. 1410), providing for re-examination of rejected warrants and certificates, a rejection made before limit of time fixed in section 11 is not void, the object of the statute being to give claimants ample time to prove their claims. Durrett

left out of the Constitution in order to take from Congress this restrictive power, and leave the appellate jurisdiction of the Supreme Court unfettered, "coextensive within the limits of the Republic?" To arrive at the true meaning, from the circumstances here stated, has produced our chief embarrassment. It may be said, although the Constitution is silent as to this restrictive power found in similar instruments, that silence is not extinction, and that Congress may, by a fair and liberal construction of its authority, exercise this power when the public welfare demands it. This may be true as to tribunals inferior to the district courts; but it would be carrying the doctrine of implication too far, as we conceive, to make it applicable to the question now under consideration. It may also be contended, as Congress have the power to make all laws which shall be necessary and proper for carrying all other powers into execution, this gave the right to enact the restrictive clause complained of. But in the case of Gibons v. Ogden, 9 Wheat., 1, etc., Chief Justice Marshall, in delivering the opinion of the court, says this limitation on the means which may be used is not extended to the powers which are conferred.

The difficulty still remains, and we confess we have been unable to solve it by any construction of the Constitution which would confer this power on Congress. The Supreme Court of the United States have expressly decided that they derive their appellate jurisdiction from the Constitution and not from acts of Congress. That it is true, Congress may restrict their appellate jurisdiction, for this power is given; but in all cases where they have not thought proper to do so, the jurisdiction remains with the court. In other words that they derive their jurisdiction from the Constitution itself. This doctrine we think correct, and that the jurisdiction of our Supreme Court, which is admitted by all to be appellate only, is derived from the Constitution in proprio vigore, and is "coextensive within the limits of the Republic." Whether this appellate jurisdiction thus derived was intended to be exerted over all the inferior courts of the country, we leave open for the future decisions of this tribunal. It is sufficient to say for the present, that Congress has no power to restrict the citizen in his right to appeal from the decisions of the district court to the Supreme Court, in cases cognizable in the former tribunal. If we test the soundness of this opinion by the rules which have been adopted for the interpretation of the Constitution of the United States, we think we shall be borne out in our conclusions on this subject.

One of those rules is, where the grant inures solely and exclusively

v. Land Commissioner, 28 T., 687; Under Act of April 25, 1871 (Gammel's Laws of Texas, vol. 6, p. 962), holders of unlocated certificates were not required to locate them at any particular period between passage of law and January 1, 1875. Laws in force prior to Act of November 29, 1871 (Gammel's Laws of Texas, vol. 7, p. 47), did not require certificate and field notes to be returned within twelve months after survey. Snider v. I. & G. N. Ry. Co., 52 T., 306; Snider v. Methvin, 60 T., 487. Under Revised Statutes 1895, arts. 4138 and 4145, survey must be made within twelve months after entry, and field notes returned within twelve months after survey. Von Rosenberg v.

for the benefit of the grantor himself, no one would deny the propriety of giving to the words of the grant a benign and liberal interpretation. Keeping this rule in view, let us refer to the eleventh clause of our Declaration of Rights. We there find that a remedy is guaranteed to the citizen for the redress of every civil injury; and we are here to pause, in order to ascertain what is properly embraced in the term *remedy*. Is it to be full, when a court of original jurisdiction only is provided to enforce it? Did the Constitution intend that in regard to one class of rights there should be supervision, and in another that there should be none? Such a discrimination and unjust spirit can not be deduced from that sacred instrument. It is the nation's panoply! No one ought to be left precluded; nay, irrevocably doomed to abide the ministry of justice, by one functionary in the first instance. Why, in any class of cases, was appellate relief imparted? Surely on the reasonable presumption that the court acting primarily in the cause might err, or might oppress; and it was to remit the citizen to another and higher tribunal to have the error or the oppression, whether real or supposed, corrected or rebuked. Still another motive operated. The government being established to insure the protection, prosperity and happiness of the people, the administration of justice in the original and supervisory forums would conduce to public satisfaction.

Another rule of construction is: Where the power is granted in general terms, as the jurisdiction of this court has been, the power is to be construed as coextensive with the terms, unless some clear restriction upon it is deducible from the context. We do not mean to assert, as we have already intimated, that it is necessary that such restriction should be expressly found in the context. It would be sufficient if it arise by necessary implication. But it is not sufficient to show that there was, or might have been, a sound or probable motive to restrict it. A restriction founded on conjecture is wholly inadmissible. The reason is obvious. The text was adopted by the people in its obvious and general sense. For this doctrine, see Story's Commentaries on the Constitution, vol. 1, p. 407. By applying this liberal rule of construction to the terms in which the jurisdiction of this court is conferred, we can not doubt for a moment but that it was the intention of the framers of the Constitution to give it a supervisory care and control over all cases originating and decided in the district courts; and we are strengthened in this opinion from the consideration that the district court is the connecting link between the people and this tribunal of the last resort. It may be regarded also as the only channel through which

Cuellar, 80 T., 249. So long as the title is imperfect or inchoate, the State may establish such regulations as it may deem necessary to perfect the title, and attach such terms as it may deem proper. It may even disavow. Land Commissioners v. Walling, Dal., 524; Johns v. Republic, Dal., 621; Hosner v. De Young, 1 T., 764; Jones v. Menard, 1 T., 771; Trimble v. Smithers, 1 T., 790; Land Commissioners v. Raguet, 2 T., 98; Norton v. Land Commissioner, 2 T., 357; League v. De Young, 2 T., 497; Kemper v. Victoria, 3 T., 135; Land Commissioners v. Riley, 3 T., 237; Smith v. State, 5 T., 397; Jones v. Borden, 5 T., 410; Warren v. Shuman, 5 T., 441; Land Commissioner v. Smith, 5 T., 471; Paschal v. Perez, 7 T., 348; Lewis v. Mixon, 11 T., 564; Hart v. Gibbons,

all admiralty and maritime cases, all cases affecting ambassadors, public ministers or consuls, can be brought into this tribunal. In the cases above enumerated the district courts have exclusive original jurisdiction. Surely, then, when the decisions in such cases are to be governed by the laws of nature and of nations, and when the peace and happiness of the Republic may often depend upon their correct adjustment, no one will contend, in this class of cases, that Congress have the power to restrict the right of the parties to appeal. If not, where shall we draw the line of demarcation? To attempt it, would be invidious and contrary to the soundest principles of construction. To illustrate still farther: It will be found by reference to the seventh and eighth sections of the Constitution, where after pointing out the manner in which the Supreme Court shall be constituted, the proviso in the eighth section says "that no judge shall sit in a case, in the Supreme Court, tried by him in the court below." This proviso evidently shows that it was the intention of the makers of the Constitution to allow appeals to be taken directly from the district to the Supreme Court. The appellate right here recognized, although not conclusive, is certainly given without restriction. With the application of one other principle, we shall close our inquiries on this branch of the subject. It is admitted to be a sound rule that all remedial laws should be construed liberally. This rule is equally applicable to the remedial parts of the paramount law. If so, we think we have not erred in giving such a construction to the constitutional powers of this court as will enable every man, suing or sued in the district court, to have a remedy here to redress his real or imaginary wrongs. We do not perceive any ill consequences growing out of this decision. The only effect it can have will be to enlarge the right of appeal to all the citizens equally alike, and give uniformity to the decisions of the courts throughout the country. We have had but little time to examine the important principle here settled; if errors should hereafter be found to exis in the opinion we trust it will not be attributed to a love of power, but to an overjealousy in guarding the rights of the people, and a desire to hear them unrestricted in this, the last citadel of justice known to the laws and Constitution of the nation.

The remaining point may be disposed of in a few words. We think the plea of set-off should have been allowed, as there is no conflict in the two acts referred to. The plaintiffs were not entitled to recover more than the balance due them, after allowing the set-off. If Morton had commenced his action against them for the set-off pleaded, then he could not have recovered, unless he had first proceeded in the way

14 T., 213; Hamilton v. Avery, 20 T., 612; Peck v. Moody, 23 T., 93; Sherwood v. Fleming, 25 T. Supp., 408; Smith v. Taylor, 34 T., 589; Snider v. Methvin, 60 T., 487; Capp v. Terry, 75 T., 391; Jones v. Lee, 86 T., 25; Thompson v. Baker, 90 T., 163; League v. De Young, 11 How., 185. Under section 23 of Act of February 5, 1841 (Gammel's Laws of Texas, vol. 2, p. 627; Rev. Stats. 1895, art. 5259), location claims and surveys, headright certificates, pre-emption claims, etc., are sufficient title to maintain action of trespass to try title, or defense to. Lambert v. Weir, 27 T., 359; Buford v. Gray, 51 T., 331; Buford v. Bostick, 58 T., 63; Horne v. Gambrell, 1 App. C., sec. 999. Prior to Rev. Stats., 1879, action could be maintained on right acquired by mere location.

pointed out by the act regulating the settlement of the estates of intestate persons. But why compel him to do this, as in justice his demand was extinguished by that of the plaintiff?

It is therefore ordered, adjudged and decreed that the judgment of the district court be annulled, avoided and reversed; and proceeding to give such a judgment as in our opinion ought to have been given in the district court, we order, adjudge and decree that the appellees, Gordon and Alley, as administrators, etc., do recover from the appellant, Morton, the sum of $23.18, with legal interest from the rendition of this judgment until paid; and that the appellees pay the costs of this court, and the appellant the costs in the court below.

*Reversed and rendered.*

Judges Hemphill and Scurry say: "We concur in this opinion so far as relates to the jurisdiction, but not on the question of the set-off."

## NO. XII.

### JOHN H. FOWLER v. IRA S. POOR.

#### (See Note 14.)

*Appeal from Red River County.*

HEMPHILL, CHIEF JUSTICE.—The plaintiff having filed the affidavit and executed the bond required by law, the clerk of the District Court for the County of Red River issued a writ of attachment against the property of the defendant on the 17th of April, 1840, but did not file his petition until the 27th of July afterwards. Among other matters, the defendant in his answer pleads that the plaintiff ought not to maintain his action, because the petition was not filed until after the issuing of the attachment. The plea was sustained by the court, and from that decision an appeal has been taken.

The counsel for the appellant insisted strenuously that in taking out a writ of attachment nothing more was necessary than the bond and affidavit required by the act regulating attachments, approved January 28, 1839. Were our attention confined to that statute alone, that conclusion might readily be adopted. But suit by attachment is a civil action; and on examining and comparing the various statutes of this Republic in relation to proceedings in civil suits, it will be found that in taking out any writ or process the plaintiff is required to file his petition.

The first statute in the order of time is the "Act establishing the jurisdiction and powers of the district courts," approved December 22, 1836, volume 1, page 198, of Laws of Texas. A portion of section 8 of this

---

Since then, it requires location and survey. Thomson v. Locke, 66 T., 383; Duren v. H. & T. C. Ry. Co., 86 T., 287. Survey must be legal, 80 T., 249. Von Rosenberg v. Cuellar, 80 T., 249. Order of survey under colonization laws, prior to closing Land Office in 1835, is not sufficient title, unless presented to Board of Land Commissioners and established in the manner required by

act is expressed in the following terms: "It shall be the duty of the plaintiff or his attorney, in taking out a writ or process, to file his petition with a full and clear statement of the names of the parties, whether plaintiff or defendant, with the cause of action and the nature of relief which he requests of the court," etc.

It may be argued that the terms "writ or process," as used in the above statute, refer only to the summons issued in ordinary civil suits; but the expressions are general and sufficiently broad to embrace all processes of every description which may be obtained at the commencement of a civil action. By this provision of the above act, then, it seems that a petition is a necessary prerequisite to the taking out of any writ or process; and according to the well established principles of construction, this provision must remain in full force and effect until repealed in express words by some subsequent statute, or the matter contained in some subsequent statute be so clearly repugnant thereto that it necessarily implies a negative of the same. It is our duty to construe all statutes in relation to the same subject matter, which do not negative one another, in such a manner that they may all stand together and have concurrent efficacy. According to these principles of construction, the act regulating attachments does not negative the necessity of a petition; but requires in addition thereto the affidavit and bond of the plaintiff, before an arbitrary process will be issued to seize on the property of the defendant. An opposite construction would not only impair the harmony of proceedings in our courts in civil actions, but would operate very oppressively on the defendant in attachment. In ordinary suits the petition would inform him of the cause of action, and he could prepare his defense; but when dragged into court by his property, ignorant of the nature of the demands against him, until they are developed in the progress of the trial, he would be taken by surprise and rendered wholly defenseless. Our system of proceedings in civil suits differs from that known in England and adopted in most of the States of the United States. There, the writ generally precedes the declaration. No injustice is committed by taking out the attachment in the first place, because long before the trial the declaration will inform the defendant of the nature of the plaintiff's demand. Here the petition is required to precede or be concurrent with the writ or process and no other method of instructing the court, the jury or the defendant in the nature of the plaintiff's cause of action has been provided by law. The mode of conducting proceedings in civil suits by petition and answer is so highly appreciated by the legislative power of this Republic, that at the last

---

Act of December 14, 1837 (Gammel's Laws of Texas, vol. 1, p. 1404). Jones v. Menard, 1 T., 771; Trimble v. Smithers, 1 T., 790; Hughes v. Lane, 6 T., 289. Nor is a certificate not recommended by Board of Land Commissioners under Act of January 29, 1840 (Gammel's Laws of Texas, vol. 2, p. 313). Kemper v. Victoria, 3 T., 135. Land certificates required by Act of August 1, 1856 (Gammel's Laws of Texas, vol. 4, p. 432), to be presented to Commissioner of Claims for registry within two years from September 1, 1856, are not evidence of title, without proof of registration. Peck v. Moody, 23 T., 93. Rules stated above are not applicable where patents have issued. Merrill v. Roberts, 64 T., 441.

session of Congress it was expressly enacted, "that the adoption of the common law shall not be construed to adopt the common law system of pleading; but the proceedings in all civil suits shall as heretofore be conducted by *petition and answer.*" Vide Laws of 4th Congress, p. 88. Here is strong legislative declaration that the proceedings in civil suits had been heretofore commenced by petition, and that they shall be conducted in the same manner for the future. This law was in operation some time before the attachment issued in this case. Upon the examination of all the laws in relation to the subject, we are of opinion that the court below did not err in sustaining the plea of the defendant, and it is ordered and decreed that the judgment of the court below be affirmed.

*Affirmed.*

Judges Terrell and Scurry concur; Judges Baylor and Hutchinson dissent.

## No. XIII.

### THOMAS CAYCE v. HINTON CURTIS.

(See Note 15.)

*Appeal from Matagorda County.*

TERRELL, JUSTICE.—This cause comes up on an appeal from the District Court of Matagorda County to reverse a judgment rendered on a motion to quash an execution which had been issued by the clerk of that court in favor of the appellee against the appellant, upon what is termed in common parlance, a twelve month's bond. The bond was taken under the provisions of the eighth section of an act, "entitled an act for the collection of the amounts due on judgments of the Supreme, district and county courts."

Two grounds were taken in support of the motion, viz: First, that the bond upon which the execution issued was not under seal; and second, that the sheriff had made no return on the original execution under which the property was sold and for the payment of which the bond was given.

The court below refused to quash on either ground and the cause is brought here for the reconsideration of that decision.

On the first point it is urged by the counsel for the appellant that the word "bond," used in the statute, being a common law term, we must refer to the common law for its legal signification; and that by that law no instrument is a bond which is not under seal. The truth of the proposition that sealing is an absolute requisite to the validity of a bond at common law is readily admitted; but the applicability of that rule to the case under consideration is not perceived. This bond was taken at a

---

**Note 11.**—Raquet v. Nixon, p. 386.

Attachment is an auxiliary process and plaintiff may proceed to judgment when it is quashed. Sydnor v. Chambers, Dal., 601; Cloud v. Smith,

time when the common law afforded no rule of decision or practice in this country; and consequently that law can not be legitimately resorted to, even for the purpose for which it is invoked by the counsel for the appellant, unless it be shown that the civil law (which under certain modifications was at that time the law of the land) had no term of similar import; for we regard it as a correct rule of construction, that where technical terms are used in a statute they are to be referred for their signification to terms of similar import in the system of laws which prevails in the country where the statute is passed, and not to another system which is entirely foreign to the whole system of municipal regulations by which that country is governed. 3 Martin, 185; 7 Martin (N. S.), 162

Were a term of art or science wholly unknown to the laws of the country, and which in itself imported a definite meaning, to be employed in a statute, then indeed the court would be compelled, ex necessitate rei, to look to the particular art or science from which it was taken, for its definition; but when the general or established law affords an equivalent term to the one used in the statute, which is well known and defined in its signification and operation, it can not be doubted that the Legislature intended to give to the new word only that force and signification which the old one possessed. In the civil law there is a term, and one in very common use, too, which is equivalent to the word "bond" in the common law. That term is "obligation," which is defined to be, first, "the binding power of any contract or agreement," and second, "a notarial instrument, or deed." This definition, embracing as it does all the essential properties of a bond, shows that the two words are used correlatively under the two systems. The word "obligation," it is true, is one of more extended signification than the word "bond," because it not only embraces all such undertakings as would at common law require a technical bond to sustain them; but it also embraces such other undertakings as are known to that system by the term "parol contracts." But the simple fact of its being a term of more comprehensive legal signification affords no presumption that in particular instances it is not the equivalent word; it may be said to be the generic term, and the other the species.

"Obligation," then, being equivalent under the civil law to the word "bond" in the common law, we are of the opinion that the latter term when employed in the statutes of the country, previous to the adoption of the common law without other definition, is to be referred to the civil law for its meaning, its force, and its legal construction; and that as

---

1 T., 611; Chevallier v. Williams, 2 T., 239; Green v. Hill, 4 T., 465; Sydnor v. Totman, 6 T., 189; Campbell v. Wilson, 6 T., 379, 392; Moore v. Corley, 4 App. C., sec. 139. The suit abates when writ is quashed if personal judgment can not be rendered against defendant. Savings Institution v. Burrow, 37 T., 88; Stewart v. Anderson, 70 T., 588; Hochstadler v. Sam, 73 T., 315; Rogers v. Burbridge, 5 T. C. A., 67. Is a harsh and summary remedy and all precedent conditions must be strictly complied with. Fowler v. Poor, Dal., 401; Sloo v. Powell, Dal., 467; Gregg v. York, Dal., 528; Sydnor v. Chambers, Dal., 601; Wooters v. McGee, 1 T., 17; Chevallier v. Williams, 2 T., 239; Caldwell v. Haley, 3 T., 317; Sydnor v. Totman, 6 T., 189; Marshall v. Alley, 25 T., 342; Culbertson v. Cabeen, 29 T., 247; Sheffield v. Gay, 32 T., 225; Moody v. Levy,

the seal, not being known to the latter, was never required to give effect and validity to the one, we are satisfied that it is not essential to the validity of the other.

There is another ground on which we should hold this instrument to bind the parties according to the terms of the statute which authorizes it to be taken. It is a well established principle in the civil law, that "in whatever way a party binds himself, he shall remain bound." 5 Martin, 194; 4 Martin (N. S.), 25, 116; 3 Martin (N. S.), 517. The appellant was the purchaser of property at sheriff's sale, and for the purchase money of which, he was, by the statute, entitled to a credit of twelve months, provided he gave bond for the payment of the money at the expiration of that time. In consideration of this right, and for the purpose of getting immediate possession of the property, he bound himself in writing to pay the money as directed by the statute; and according to the above mentioned principle, he must remain bound in the terms of his obligation; and upon his failing to comply with those terms, the statute gave the remedy, viz., an execution upon the bond.

We are therefore unanimously of the opinion that the court below did not err in refusing to quash the executions, for the reasons presented in the first ground upon which the motion was predicated.

Upon the second point also we have no hesitation in deciding that there is no error in the judgment rendered by the court below. The statute does not require that the sheriff should have made any return in writing on the original execution; had it done so, however, we should have considered the requirement as only directory to the sheriff—and consequently could not impair the plaintiff's right under the law, in the security which was given for the purchase money of the property sold under execution for his benefit. 12 Wheat., 64; 6 C. R., 440.

We are therefore of the opinion that the judgment of the District Court for Matagorda County was correct, and order that the same be affirmed with costs.

*Affirmed.*

## No. XIV.

### THOS. CAYCE v. HORTON AND CLEMENTS.

#### (See Note 16.)

*Appeal from Matagorda County.*

TERRELL, JUSTICE.—This cause being of similar character, turning upon the same points and governed by the same principles with that of

58 T., 532; Evans v. Tucker, 59 T., 249; Stiff v. Fisher, 2 T. C. A., 346; Sarrazin v. Hotmann, 16 T. C. A., 351; Ball v. Bennett, 21 T. C. A., 399; Dreiss v. Faust, 1 App. C., sec. 33; Whitley v. Jackson, 1 App. C., sec. 575; Schwartz v. Burton, 1 App. C., sec. 1216; Scram v. Duggan, 1 App. C., sec. 1269. No presumption will be indulged to supply defects. City Nat. Bank v. Flippen, 66 T., 610; Focke v. Hardman, 67 T., 173; Perrill v. Kaufman, 72 T., 214; Moore v. First Nat. Bank, 82 T., 537. But literal exactness is not required. Lewis v. Stewart, 62 T., 352. If the writ of citation is defective and the defect

Cayce v. Curtis, already decided, we refer to the opinion delivered in that case for the reasons upon which our decision is made.

We affirm the judgment of the District Court of Matagorda County, with all the costs accruing upon the appeal to this court.

*Affirmed.*

## No. XV.

### EX PARTE COLIN DE BLAND.

#### (See Note 17.)

*Fort Bend County.*

TERRELL, JUSTICE.—This was a motion made by an attorney of the District Court for the county of Fort Bend to dismiss all cases on the docket of said court which had originated since the 19th day of August, 1839, and to adjourn the court until the next regular term.  The grounds in support of the motion are, that the clerk of the court was not elected agreeably to the provisions of the Constitution and laws of the Republic, but that he exercised the functions of the office by virtue of an appointment from the district judge.  The first question for this court to decide, and which controls the case, is whether we can take cognizance of the case in the form in which it is brought before us.  We are unanimously of opinion that we can not.

The law relied upon in argument, as giving the court jurisdiction in the case, is the third section of the act of Congress organizing the Supreme Court, which says:  "The said Supreme Court shall have jurisdiction over, and shall hear and determine all manner of pleas, plaints, motions, causes and controversies, civil and criminal, which may be brought before it from any court in this Republic, either by appeal or other legal process, and which shall be cognizable in the said Supreme Court, according to the Constitution and laws of this Republic."  The question here naturally arises, has this case been brought here "according to the Constitution and laws of the Republic?"  The "laws of the Republic" point out the mode by which suits shall be brought in the different courts.  This court, possessing "appellate jurisdiction" only, can consequently take cognizance of such cases only as are properly brought here from some of the inferior courts.  It therefore follows, as a necessary consequence, that they must be brought into those inferior courts in the manner pointed out by law; and if they are not so brought into the court below, the defect can not be cured by an appeal to this court.

There are several methods known to the law by which causes may be brought into the district court.  The one generally adopted is by petition and summons, and we do not say, if objection had been made to the writ in any cause in the court, as having been issued by a clerk who had no

---

is discovered before defendant answers, a new writ may be awarded.  If defendant answers, he waives objections to process.  Wescott v. Menard, Dal., 503; Kavanaugh v. Brown, 1 T., 481; Cartwright v. Chabert, 3 T., 261; Wood v.

