Caria,per Harper, Chancellor.
It is argued against the conclusiveness of the Decree of 1790, that the order to apply the money, first to the payment of Charles Murray’s mortgage, and to deliver over the residue of the securities arising from the sale, to Gen. Greene, was made, not in the case of Murray vs. Murray, but in that of Greene vs. Ferrie. But it is to be recollected that Ferrie was made a party to the bill of Murray, and the fact of the conveyances to Pierce White and Call, to Cecil and to Ferrie, was expressly put in issue by the bill. An order was made in the case of Murray vs. Murray, that the land should be sold, and the proceeds remain subject to the order of the court. If there were only a life estate transferred to Ferrie, by the deed of Washington and wife, then Mrs. Washington would have been entitled to the surplus of the proceeds, after satisfying the mortgage ; deducting the value of her husband’s life estate. When therefore an order was made in the case of Greene vs. Ferrie, that the surplus should be paid to Gen. Greene, it follows unavoidably, that it must have been decided negatively in the case of Murray vs. Murray, that Mrs. Washington was not entitled to it. But it is plain that the cases were considered and decided together. This would not be questioned, if the titles of both cases stood at the head of the decree. But certainly it would not be less a decree in both cases, *188 if it were plainly expressed in the body of the decree itself; and it seems to me that it is so plainly expressed. The only decree which appears for satisfying the mortgage of Murray, is that which is said to have been made in the case of Greene vs. Ferrie. The mortgage was not at all in question in that case, nor was Murray a party to it, and it follows inevitably, that the decree was intended to grant the relief, claimed by the bill of Murray.
Then, against the relief claimed for carrying into effect the decree of 1790, the lapse of time is pleaded as a bar. The first question which arises, is in respect to the right of the defendant, Daniel, to make that question. So far as respects his claim, in the right of Mrs. Washington, as being a purchaser from her heirs, it is plain that he has no interest in that question. She and all claiming under her are estopped by the decree. Whoever may be entitled to the land or its proceeds, she and those claiming under her are not. Whoever may have an interest in enforcing or resisting the decree, she and those claiming under her have none. Suppose the defendant to succeed in establishing the fact, by the presumption of law or otherwise, that the decree has been carried into effect, the money paid, and the conveyance executed, he only shews that the title to the land or the money is in others, and he has no claim or concern in the matter.
But it is urged in behalf of the defendant, Daniel; that, as the personal representative óf David Murray, he is the proper person to contest the claim of complainant, that the personal estate is first liable for the payment of debts, and though an executor is not a necessary party to a suit, for foreclosure of a mortgage, yet, in this country, where the mortgage is only regarded as>a security for the debt, he is a proper party, Though, in general, I think the executor might properly enough be made a party to a bill for enforcing a mortgage againt the heir, yet, if it were brought against the heir alone, and he did not raise the objection, certainly the court would not refuse to decree, on account of the want of parties. And if the heir thought proper to admit the claim, the executor would not be permitted to volunteer, for the purpose of defending him. Here no relief is claimed against the defendant as administrator; the *189 bill only seeking relief against him as representing the heirs of Mrs. Washington. But though in general, the personal representative might be a proper party, I am ofopin- • ion that he would be neither a necessary or proper one in the present case. The land was sold subject to the mortgage, and the aleinee covenanted to pay it oil’. This was a covenant, running with the land. Could Ferrie have objected, in the suit against him, that the personal estate of David Murray was first liable for the debt, and that his personal representative ought therefore to be made a party'? As observed in the case of Drayton vs. Chandler, Rice’s Eq. Rep. 283: Is there any such privity between the heir and the executor, as to make the acts or admissions of one, evidence against the other'? If the heir should recognize or admit the liability of the land to satisfy the mortgage, after a lapse of more than twenty years, and when the debt, as against the executor, must be. presumed satisfied, would he not be bound by such admission! If Ferrie had answered in the present suit, and admitted the claim of complainant, could the personal representative have interposed to say — I have the right to defend you against it. And supposing him to be properly a party, his permitting the bill to be taken pro confesso, is equivalent to such admission.
It would be the duty of the court, of its own motion, in decreeing upon the rights of Ferrie, to inquire if he were properly made a party. As I understand it, publication was made in pursuance of the act of assembly, requiring John Ferrie, or, if he should be dead, his heirs, to appear. It was objected that from his long absence without being heard of, he must be presumed to be dead; and that his heirs should be required to appear by name. If it is as al-ledged, he has been absent from the state for fifty years, and his heirs are unknown, this would be impossible. It seems to me to be a substantial, and the only practicable mode of complying with the directions of the act. I do not perceive that the heirs would receive any greater benefit if they were named in the advertisement requiring them to answer.
But independently of the act of the Legislature, I am of opinion that this is a case in which, according to the Eng *190 lish practice, the court would proceed to a decree without making him a party. As it is said, in .the case of Bowden vs. Schatzell, Ball. Eq. Rep. 365: “The English practice is stated by Lord Redesdale, in the case of Smith vs. the Hibernian Mine Company, 1 Scho. & Lef. 240, to he, when one party is out of the jurisdiction, and other parties within it, to charge the fact by the bill, that such person is out of the jurisdiction, and then the court proceeds against the parties, and if the disposition of the property is in the power of the other parties, the court may act upon it.” So it is said in Mitford’s PL 139 — 40, that the heir at law is a necessary party to a bill to carry into execution the trusts of a Will; but if he is out of the jurisdiction, the court will execute without him. And see Me Cle-land vs. Shaw, 2 Scho. & Lef. 548. The court would more readily proceed in this way, because it is plain that the heirs of Ferrie have in reality, no substantial interest. The only parties having a real interest, seem to be the complainant, and the representative of Gen. Greene.
But suppose the defendant, Daniel, to have the right of shewing that the decree is satisfied, has he succeeded in doing so % In addition to the lapse of time, the circumstances relied on, are the Master’s report of sales, the confirmation of the report, the decree reciting that Ferrie had joined in the conveyance, and the account stated between the treasury of the United States and Gen. Greene, in which he is charged with the amount recovered against Ferrie. With respect to the report and its confirmation, I have no doubt of the truth of the position, contended for on the part of complainant, that a sale made by order of the court is only complete when the terms of sale are complied with, and the purchaser accepts a conveyance. This is not reported. Ferrie may have joined in the conveyance prepared by the master, and in his office, but which may never have been received by the purchasers, Tunno and Penman. As is said, in the case of Messervey vs. Barelli, 2 Hill’s ch. 567, the confirmation of a master’s report of sales, or of having paid money, is not a judicial, but an administrative order. Its object is not to determine the truth of the fact reported, but to approve of it, •and to protect the master in what he has done; and if the *191 fact be incorrectly reported, parties are not estopped to shew the truth. With respect to the account between the federal treasury and Gen. Greene, it concludes nothing. A judgment had been obtained against Ferrie, and the land had been bid off at a certain price. It was known how much was due on the mortgage of Murray, and the accounting officer might very well have charged Gen. Greene with the amount which he was entitled to receive, and which there seemed no reason to doubt he would receive. Gould he have been justified under the act of congress, in paying to Gen. Greene the full amount of the appropriation, when he had such a security for this sum 1 These circumstances are evidence, but they, as well the presumption arising from lapse of time, are liable to be rebutted.
I think the account contains evidence on the face of it, that Gen. Greene, had not then been paid. It first charges him with the amount of Tunno & Penman’s bid ; then interest is calculated on Murray’s mortgage up to the time of taking the account in 1793, and that amount is deducted from the former, to shew the share of the funds which Gen. Greene was entitled to receive — to shew how much Murray was entitled to take from the common fund.. If Gen. Greene had, before that time, received any gross amount of money or securities, it would have been of course, to charge him simply with such receipt. There would have needed no calculation to show the share of the fund to which each was entitled.
I think the admissions of Mr. Tunno, testified by his swearing to the bill, are proper evidence to rebut these presumptions. It is well settled, that the admissions of a person having complete knowledge, against his own interest, are evidence between third persons, and more especially when they are in writing, and the party making them is dead. Such was the case of entries made by a Steward, charging himself with monies received on account of trespasses on certain premises, which were received as evidence of his employer’s seisin of the land. The cases are very fully collected in Barker vs. Ray, 2 Russ. 63, and the note 67; and the case itself is to the same effect; though a question is made, whether the declarations of a *192 person, having complete knowledge, and indifferent in point of interest, might not also loe received. It is settled, that the declarations of tenants, as to the person under whom they hold, of an assignor of a devisee admitting himself a trustee, are admissible between third persons; and so the declaration of- a wife, that her husband was tenant for life, to rebut the effect of his possession.
Were these admissions against Mr. Tunno’s interest! He was, prima facie, liable to be compelled to comply with the terms of sale. If a bill had been filed by the representative of Gen. Greene, to compel him to complete his purchase, would not these admissions have been evidence to fix his liability, and to rebut the presumption arising from lapse of time. The argument of the defendant is, you shall be presumed to have paid your money and received a title ; but he says, I have not paid the money, and I have no title. Does he not disclaim an important interest, and subject himself to an onerous liability.
It is agreed on both sides, that if the possession be in fact vacant, it shall be adjudged in him who has the right. I am satisfied, upon the evidence, that the possession was in fact vacant from before the date of the decree, until Tunno took possession by his tenants, Rose and Rutledge, in 1823. Then if we suppose, that a conveyance was made to Tunno, he must be regarded as having been in possession all that' time, and that his title is doubly perfected. But though he admits that this is not true, the defendant would shew the contrary, that is to say, that he himself has no right either legal or equitable.
If Tunno was not authorized to purchase for the complainant’s intestate, complainant might maintain a bill against him to complete his purchase. His admissions would be evidence against him, and repel the presumption from lapse of time, while his statements with respect to his. excuse for not applying with the terms of sale, would be no evidence in his favor. The complainant chooses to admit by his bill, that he had a good excuse for not complying, and who has a right to call that admission in question.
If we suppose, as suggested, that the land remained in the possession of the Court, this would of itself, rebut *193 the presumption arising from the lapse of time. The land would remain permanent evidence, that the decree of the Court had not been carried into execution.
But I am satisfied that the matter cannot be so regarded. Until changed by an actual conveyance, the title must remain as it was before. As I have said, I perceive no evidence of any possession, from before the date of the decree, till Tunno took possession in 1823, with the exception of a casual and interrupted possession on the part of Mrs. Omones, the daughter of Mrs. Washington. Then, I am satisfied that the lapse of time must be taken to bar the claim of defendant, and not that of the complainant, and this independently of the effect of the decree of 1790. I believe the conveyance of Washington and wife vested the fee in Ferrie, even though the right of inheritance were not renounced: but this not necessary to consider. The defendant admits the mortgage to David Murray, and that he claims under David Murray. Then the possession, as is agreed, is to be adjudged in him who has the right; but the right of possession for his term of two thousand years, was in Charles Murray ; and if this were a bill to redeem, by those claiming under Mrs. Washington, it is plain that their claim must be adjudged a stale one.
If the representative of Gen. Greene, had brought his bill against the representatives of Charles Murray, to enforce the decree by a sale of the land, the latter might have made a strong case, and probably have defended himself by the lapse of time. This advantage he has thought proper to waive ; but it would be singular if the only party entitled to defend himself by lapse of time, should lrimself be held barred by the lapse of time..
Claiming under David Murray, the defendant is estopp-ed to deny his seizin : all parties and privies are bound by an estoppel. An estoppel is reciprocal, and binds both parties. Co. Lit. 352, a. A person making a conveyance, who has no title at the time, but afterwards acquires one, is estopped to deny that he was seized at the time of the conveyance. So a party accepting a conveyance is estopped to deny his grantor’s title. If he afterwards buys in a better title, though he may claim to be reimbursed the money, which he has paid to complete the title, he cannot use it *194 to defeat Ms contract with his first grantor. Such was the decision of this Court in the case of Foster vs. Thompson, decided at Columbia. Mr. Thompson had bid off the land at a certain price, and afterwards purchased in the title to a part of it at a lower price. He claimed an abatement of price, to the amount of his bid, for that portion of the land; but the Court held him entitled only to what he had actually paid to perfect the title. Such was the case of Walden vs. Crane, 14 Peters, 153. There, a party who had contracted to purchase was put into possession, and afterwards discovered that the grant was issued to his vendor’s ancestor after his death, and was therefore void. He took out a grant in his own name, and then brought a bill to rescind the first contract. He was not allowed to set up his own title. If is said by the Court, “ If a ven-dee buys up a better title than the vendor’s, and the vendor was guilty of no fraud, he can only be compelled to refund to the vendee the amount of money paid for the better title..” It is said, the vendor and vendee stand in the relation of landlord and tenant. The party would have had a right to be refunded the fees he had paid to the officers for entering the land in his own name ; but as he had made use of his apparent title, by attempting to defeat his vendor’s title, he was not allowed even that. In Crane vs. Morris, 6 Peters, 611, the plaintiff proved a title in Roger Morris and wife, and produced a release from Morris and wife, to the persons under whom he claimed, executed previously to 1779, reciting a lease. In 1779, Roger Morris was attainted by the Legislature of New-York, and the land in question was sold to the person under whom the defendant claimed. The plaintiff gave in evidence the defendant’s title, having given notice to produce it. It was held that the recital of the lease was evidence, even between third persons; but the defendant was in no sense a stranger to the title ; he claimed in privity of estate, from the State of New York, whose sole title was founded upon that of Morris and wife. Both parties claimed under Morris and wife, but the plaintiff by the prior title. It was said that the recital binds the parties, and those who. claim under them by matters subsequent. Here, was no surmise that the defendant might have a title paramount *195 ■Of adverse to that of Morris and wife; hut on .its being shown that he claimed under them, that which would have been conclusive against Morris and wife, was held to be conclusive against him.
Nor can a party set up length of possession under a different title, against the title under which he entered. In Barr vs. Gratz, 4 Wheat, 213, the party entered on a tract of 1000 acres of land, on a contract to purchase 750 acres, .part of it. The 750 acres were afterwards assigned to him by metes and bounds. He continued in possession of the residue, and purchased the title of a third person, who had been in possession long enough to mature a title. It was held that his continued possession ofthis part was the possession of his first grantor; that he was quasi a tenant of the first grantor, and could not set up possession under another title. The right acquired by the person from whom he purchased, was limited to his actual possession. It was said in this case, that when the possession is vacant, there is a constructive actual seisin, in him who has the right.
The present defendant has taken out a grant from the State to himself; but he could not set this up against his grantor, David Murray, or his heirs, nor against the representatives of Charles Murray, who claims under David Murray, by a title admitted to be paramount to his own. There was some suggestion of his having a title under the statute of limitations : but this he would not be permitted to set up, and he is properly made a party, that he may be restrained from setting up these titles, and that a clear title may be made when the land is sold. This is not, as •suggested, an action to try title in the Court of Chancery. Both parties concur in the title of David Murray, and claim under him, and upon equitable principles, the defendant cannot avail himself of any' title, subsequently acquired. If defendant claimed by a title paramount to that of complainant’s intestate; as that David Murray, or any one under whom David Murray claimed, had conveyed to him or any one under whom he claims, before the mortgage to Charles Murray ; he would have had a right to have this question tried at law. But he alleges no such title, and he was bound to allege it if any such existed. The complainant *196 having a right to enforce the sale of the land, it will not do to let a cloud hang over the title, which might prejudice the sale, upon a surmise that he may possibly be able to shew such a title.
Though the defendant, Daniel, as we have decided, has no interest, and the bill could not be sustained against him alone, yet he is properly a party, that the title may be quieted. The tenant in possession of the land, is always a proper party to a bill for foreclosure. It is said to be proper to make subsequent incumbrancers parties. Defendant might properly be made a party as terre tenant. In scirefacias, against an heir, to shew cause why the land of his ancestor should not be extended, the terre tenants are proper parties. 2 Saund. 7, n. 4. The tenant may plead that the conveyor or debtor, conveyed to him before the judgment, or that he was not seized. In this case, defendant might have pleaded, if the fact were so, that David Murray conveyed to him before the1 mortgage; but claim-. ing under him, only by matter subsequent to the mortgage, could not plead that he was not seized. On a bill to carry into execution the trusts of a will, the heir at law, though he has no interest, yet being the person entitled to contest the will, is a necessary party in order to quiet the title. If there were a former will, giving the land to different persons, it is said these need not be made parties. Yet if they set up a claim under that will, they may be made parties. Mitf. PI. Here the defendant does set up and insists on his claim as a purchaser from the heirs of Mrs. Washington. It would be contrary to- equity, and injurious to the parties in interest, that a sale should be made before that claim is quieted.
It is hardly necessary to advert to the argument, that Mrs. Washington or her heirs, were the heirs of Charles Murray. If the mortgage was merged in the decree of 1790, only the personal representatives of Charles Murray have a right to enforce that decree. If it was not, (and I do not perceive how it could be, as the title to the term must remain in some one) then, upon the death of Charles Murray, the term of two thousand years went to his personal representative.
As to the plea of the purchaser, foryaluable consideration. *197 without notice, I think the testimony of the witnesses, D'Lyon and Mallory, sufficient to establish actual notice. The certificate of D’Lyon of the 17th January, 1831, though not evidence, except to discredit D’Lyon, is not absolutely inconsistent with his testimony. He states, that on his application to Tunno, he replied by letter, that he had purchased on behalf of the heirs of Washington or Murray. It must of course have been, according to fact, in behalf of Charles Murray. He states Tunno to have added, “that he had no claim to it,” which must, of course, mean personal claim, “ and that he would not interfere with itthat is to say, as having such claim. I think the certificate too vague to weigh against the witness’s, evidence on oath, corroborated as he is by Mallory. The small consideration paid, is a strong circumstance to corroborate this evidence, and to shew that the parties had reason to apprehend that the title would be subject to litigation.
I am inciined to think too, that the testimony of Mr. Barnwell is sufficient to shew notice before the completion of the purchase. Supposing Dr. Daniel not to have been present at the sale, notice to his agent was notice to himself. 2 Fonb. 154. Besides, we have decided, Donald vs. Mc Cord, Rice Eq. 340, that “where no discovery is sought, which may jeopardize the title of the defendant, the plea of purchaser, for valuable consideration, without notice, will not avail against a plaintiff having the legal title.” The legal title to the term is in the complainant, or if we regard the title as in Ferrie, the complainant and the other defendant, the representative of Gen. Greene, are entitled to avail themselves of Ferrie’s rights. The meaning of the decision evidently is, that a party having purchased the legal title, without notice of an equity, shall be protected, but the defendant certainly has not the legal title.
The only remaining question to be considered, is that raised between the complainant and the defendant, the representatives of Gen. Greene; whether the former is entitled to interest beyond the penalty of his bond. I take it to be fully settled as the general rule of the Court, that interest will not be carried beyond the penalty of the bond. Such was the decision in Stewart vs. Rumball, 2 Vern. *198 509, in which it is said that a man can have no more than his debt, and the penalty is the utmost of the debt. Such was the decision in Tew vs. Winterton, 3 Br. C. C. 489, in which a judgment had been entered upon the bond, in pursuance of a warrant of attorney, and Lord Thurlow refused interest beyond the penalty; and Knight vs. McLean, 3 Br. C. C. 496, in which Mr. Justice Buller, sitting for the Chancellor, allowed interest beyond the penalty, but, upon re-hearing,, his decision was reversed by the Chancellor. The case of Lord Lonsdale vs. Church, 2 T. R. 388, I understand to have been overruled by late decisions of the Law Courts. But I do not understand this point to be questioned,
Then I am satisfied that the rule is as laid down, Fon-blanque, 2 vol. p. 430, that “ whenever the debt is carried beyond the penalty, it is always for a defendant, upon the maxim, that he who would have equity must do it; as where the party has been delayed by the injunction of this Court, or the like. But never for a plaintiff, any further than he could charge him at law; because he has chosen his own security, and must therefore abide by it.” There is a note to the same effect by the Editor, to the case of the Mayor of Galway vs. Russell, 4 Br. Par. Ca. 523. Such is evidently the principle of the case quoted from 2 Eq. Ca. Ab. 611; that although Equity cannot carry, interest beyond the penalty, yet it will not suffer the mortgagor to redeem without paying all that is due. Similar in principle is the case of Godfrey vs. Watson, 3 Atk. 517. Where a creditor by statute is in possession of the land, the debtor can, at law, only compel him to account for the extended value of the profits, which are always below the true profits. In Equity the debtor may have an account of the true profits; but then he must consent to pay interest, though it exceeds the penalty. The principle is expressed, though there was no question of carrying interest beyond the penalty in that case, in Crueze vs. Hunter, 2 Ves. Jun. 157. The estate of the mortgagor is forfeited at law, and can only be reclaimed by the aid of this Court; which, in its well known principle, will only relieve upon his paying all that is justly due.
The case of Clarke vs. Lord Abingdon, 17 Ves. 106, is *199 supposed to be one to shew, that in every case of a mortgage, interest may be carried beyond the penalty; whoever may be the plaintiff. But this is a misconception. In that case, the mortgage was not intended to secure the bond, nor did it mention or refer to the penalty. There was a deed of trust to sell and raise certain sums to be paid to Bertie; then a memorandum was executed by Bertie, declaring that those sums should be vested in the trustees, in trust, to payoff certain sums of money' — stating the sums actually due by Lord Abingdon, on the condition of his bonds. If is in reference to this, that the master of the Rolls says, the penalty is not mentioned or alluded to in the bond. He says, “ If a creditor by mortgage, after-wards took a bond, it is admitted, he might recover interest beyond the penalty on the mortgage.” If a debt were secured by a mortgage alone, that would be merely a liquidated debt, and, like every other liquidated debt, must carry interest until it is paid. And the taking of a penal bond afterwards, could not affect the right to recover such interest.
But in the language of the cases, the penalty is the entire debt, and the mortgage is only intended to secure that, and refers to the bond; on what principle would you give more than the debt. Here the mortgage does expressly refer to the bond, and states the penalty.
I am inclined to think too, that, on the ground of laches, the complainant should not be allowed to recover beyond the penalty. He was first to be satisfied, and was more peculiarly the actor. There would be a great hardship on this defendant, in taking a different view. He was charged by the United States, upwards of £2000, on account of this recovery, and now, if the complainant were' allowed interest to the present time, his demand would more than exhaust the whole fund intended to secure both.
It is ordered and decreed that the plantation, Nelville, mentioned in the pleadings, be sold by the master of this Court, on the following terms: that is to say, one third cash, and the residue in one and two years, with mortgage of the property and personal security, and that the defendant, Daniel, yield the possession, and account for the rents and profits received by him, since the filing of this bill; *200 and that the complainant he paid the sum of two thousand pounds sterling, with the premium of exchange on London, in satisfaction of his mortgage, and also his costs in this Court; and that the residue of the fund be paid to the defendant, Nightingale; and that the defendant, Daniel, pay the costs of this bill. And it is further ordered, that the master may settle the time of sale, and that, with the concurrence of complainant, he may modify the terms, so as to bring the property to sale with the greatest advantage to the parties concerned in interest.
WM. HARPER.